Commonwealth *v.* Kontos, Appellant.

344

Argued October 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

rear-gument refused May 26, 1971.

*Louis J. Grippo,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, April 22, 1971:

Nick Kontos, the appellant, along with Gus Kontos, Mary Dixon and Jean Davis, was indicted for murder

and voluntary manslaughter in connection with the slaying of Hazel Deere. Appellant was subsequently convicted of murder in the first degree. On appeal to this Court, we reversed the judgment of sentence and granted a new trial due to an error that need not presently concern us.[1] *Com. v. Dixon,* 432 Pa. 423, 248 A. 2d 231 (1968). On retrial the jury again found appellant guilty of murder in the first degree and he was sentenced to life imprisonment. Owing to alleged errors committed during the second trial, this appeal followed.

Appellant would have this Court set aside the conviction and grant a new trial for alternative reasons: (1) the introduction of certain evidence allegedly obtained by an unconstitutional search and seizure; (2) the receipt into evidence of hearsay statements attributable to appellant's co-defendants and implicating appellant; and (3) the court's failure to allow defense inspection of extrajudicial statements made by the Commonwealth's witnesses.

In regard to the search and seizure issue, the question is whether physical evidence which was found in a heating duct in the basement of the apartment building in which appellant was a tenant should have been suppressed. Though there was no valid warrant for the search, there is no dispute that the custodian of the building freely consented to the police search. However, appellant argues this consent is irrelevant, citing *Stoner v. California,* 376 U.S. 483 (1964), and *Chapman*

---

[1] In the previous appeal, Mr. Justice ROBERTS, speaking for the majority, granted a new trial as statements given to the police by the accused should have been suppressed since they were obtained in the absence of counsel. While counsel was "waived", it was held, quoting *Com. v. Ritchey,* 431 Pa. 269, 245 A. 2d 446 (1968), "that as a matter of law there cannot be a finding of a knowing and intelligent waiver of the right of counsel unless the accused shall have been explicitly informed that he is entitled to free counsel if he is indigent." 432 Pa. at 425, 248 A. 2d at 233

v. *United States,* 365 U.S. 610 (1961). Read together, these cases hold that neither *Stoner's* hotel clerk nor *Chapman's* landlord may constitutionally consent to a search of leased premises when a guest or tenant exercises complete custody and control over the area in question. *See, also, Com. v. Storck,* 442 Pa. 197, 275 A. 2d 362 (1971) ; *Com. v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966). 

While appellant's lease provided for his use of the basement, this right was *shared* by the other tenants as well as the custodian. We deem this additional element of joint use, not present in either *Stoner* or *Chapman,* to be dispositive of the issue.[2] Although this appeal may appear, at first glance, to be factually analogous to *Stoner* and *Chapman,* it is constitutionally akin to *Frazier v. Cupp,* 394 U.S. 731 (1969). In *Frazier,* the accused owned and used a duffel bag but permitted his cousin to also use it. Upon questioning by the police, the cousin consented to a search of the duffel bag which resulted in the seizure of certain articles of clothing belonging to the accused. Confronted with the argument that this clothing should not have been introduced into evidence, the United States Supreme Court noted : "Since [the cousin] was a joint user of the bag, he clearly had authority to consent to its search. The officers therefore found evidence against petitioner while in the course of an otherwise lawful search." 394 U.S. at 740. We do not believe appellant's Fourth Amendment rights were violated.

Appellant next contends that certain testimony of a Commonwealth witness should not have been admitted

_____

[2] While *Mancusi v. DeForte,* 392 U.S. 364 (1968), relied on by appellant, demonstrates that the accused does not automatically waive the protection of the Fourth Amendment by sharing space with another, *Mancusi* indicates that the accused's rights may be lost through the other person's consent to the search. 392 U.S. at 369-70.

into evidence. The witness was asked on direct examination his recollection of what Gus Kontos, one of appellant's co-defendants, had said upon hearing a radio report that the victim had died. Over objection, the witness responded, "Gus said, oh, no." Citing *Roberts v. Russell*, 392 U.S. 293 (1968), and *Bruton v. United States*, 391 U.S. 123 (1968), appellant now claims he was denied his right of cross-examination by the admission of this testimony. In granting retroactive effect to its *Bruton* decision, the Supreme Court in *Roberts* succinctly interpreted the teaching of *Bruton* to be that, "despite instructions to the jury to disregard the implicating statements in determining the co-defendant's guilt or innocence, admission at a joint trial of a defendant's extrajudicial confession implicating a co-defendant violated the codefendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 392 U.S. at 293. The statement attributed to one of the codefendants does not rise to the level of a confession and it certainly does not implicate the appellant in any way. Thus, we see no error in the admission of this testimony as there is no basis for applying the *Bruton-Roberts* rationale to this factual setting.

Appellant lastly argues that the trial court's failure to direct the Commonwealth to turn over prior statements given to the prosecuting authorities by the witnesses for the Commonwealth, following their testimony on direct examination, deprived the appellant of the opportunity for effective cross-examination.[3] It appears from our reading of the complete record that no requests were made by the defense to interview the Commonwealth's witnesses or to examine their state-

---

[3] The Commonwealth's argument that inspection was not completely forbidden but merely delayed is unavailing since it appears from our reading of the record that the statements of several witnesses were *never* given to the defense. Hence we will treat the issue as the failure to divulge rather than delayed inspection.

ments in the Commonwealth's possession prior to either trial. However, defense counsel made repeated requests throughout the second trial which were denied by the trial judge on the ground there was no authority in this Commonwealth for such a practice.[4] In the course of these colloquies, the Commonwealth maintained the position that since these witnesses had testified during appellant's previous trial, there would be no surprise and hence no necessity for granting access to these extrajudicial statements. Only when finally given the complete citation to the appropriate case—*Com. v. Smith,* 417 Pa. 321, 208 A. 2d 219 (1965)—did the trial judge accede to appellant's request.[5]

In *Smith,* five members of this Court, although for different reasons, concluded that a witness' prior written statements should be made available, upon request, to defense counsel. *See, also, Com. v. Swierczewski,* 215 Pa. Superior Ct. 130, 257 A. 2d 336 (1969) ; *Com. v. Kubacki,* 208 Pa. Superior Ct. 523, 224 A. 2d 80 (1966). *See, generally,* Annot., 7 A.L.R. 3d 181 (1966) ; Annot., 7 A.L.R. 3d 8 (1966). Although, chronologically speaking, these requests cannot be strictly classified as motions for *pretrial* discovery, we cannot ignore our case law and rules on pretrial discovery. Particularly relevant is the last sentence of Pa. R. Crim. P. 310, which provides: "In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth." *See, Com. v. Hendrick,* 48 Pa. D. & C. 2d 551 (C.P.

---

[4] Initially, the trial judge refused the request as he believed there was *no* authority in this Commonwealth. When later given the case name, the request was refused as defense counsel did not have the numerical citation.

[5] Even when confronted with the complete citation, the request was preliminarily refused. Indeed, it plainly appears from the record that the first statement of any witness given to the defense was solely due to the prosecutor's unilateral offer.

Phila. 1970); *Com. v. Shepherd,* 36 Pa. D. & C. 2d 653 (O. & T. Luzerne 1965). Viewed in this light, the question then becomes whether *Smith* or Rule 310 controls this appeal. In our opinion, we deem *Smith* to be dispositive of this appeal and that Rule 310 must be strictly interpreted. *Cf., Lewis v. Lebanon Court of Common Pleas,* 436 Pa. 296, 260 A. 2d 184 (1969).

In the first place, such a distinction is functional, inasmuch as the traditional rationales for limiting or prohibiting pretrial discovery in criminal cases do not extend to the at-trial situation. Foremost of these rationales has been the fear that more liberalized pretrial discovery would enable the criminal defendant to construct a perjured defense. As Chief Justice VANDERBILT once declared: "In criminal proceedings long experience has taught the courts that often discovery will lead not to honest fact-finding, but on the contrary to perjury and the suppression of evidence. Thus the criminal who is aware of the whole case against him will often procure prejured testimony in order to set up a false defense." *State v. Tune,* 13 N.J. 203, 210, 98 A. 2d 881, 884 (1953). The traditional opposition to criminal discovery has also expressed a concern that such advance disclosure might in some cases lead to the attempted intimidation or killing of witnesses for the prosecution. *See, e.g., Discovery in Criminal Cases,* 44 F.R.D. 481, 485 (1968). Even assuming for the moment that these fears have any substantial basis whatsoever, a view which is open to much doubt, it is clear that they have no place in the context of the disclosure at trial of the prior statements of Commonwealth witnesses. Once the Commonwealth's witnesses have appeared at trial, their personal safety and freedom from potential intimidation are in no way enhanced by denying to the defendant access to their pretrial statements. Nor would the granting of such access to the defendant heighten his opportunity for successful perjury.

While not binding upon this Court, a second reason for a literal reading of the term "pretrial" in the last sentence of Rule 310 lies in the fact that the rule is not in accordance with the American Bar Association's recommended standards of criminal justice. ABA Project on Standards for Criminal Justice, Discovery and Procedure Before Trial, §2.1(a)(i) (1970) provides: "(a) Except as is otherwise provided as to matters not subject to disclosure (Section 2.6) and protective orders (section 4.4),[6] the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control: (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statements. . . ."

A third reason is best demonstrated by reference to the record in the instant appeal. In the course of the prosecutor's direct examination of a Joseph Graciano, the first witness whose prior statement was made available to the defense, Mr. Graciano testified that one of appellant's co-defendants asked, "What if he killed the lady?" Although Mr. Graciano initially testified that another co-defendant, Gus Kontos, did not reply to this question, with prodding by the prosecutor, this witness later testified that Gus Kontos stated, "If the old lady dies, I'm not worried". However, the defense attorney, referring to Mr. Graciano's prior statement and surprising the prosecutor, quickly noted that Mr. Graciano's initial response was correct and that his later

---

[6] Sections 2.6 and 4.4 set out certain exceptions to the general rule of discovery. The prosecution's work product and the identity of non-testifying secret informants need not be disclosed. In addition, disclosure is not required for matters where it would involve a substantial risk of grave prejudice to national security. Finally, the trial judge is given a general power to restrict or defer discovery in exceptional cases upon a showing of cause.

testimony was incorrect. Despite the fact that the false statement was attributed to appellant's co-defendant, it should be most evident that discovery of this statement enabled the court below to reject false testimony. *See, Com. v. Turra,* 442 Pa. 192, 196, n. 2, 275 A. 2d 96, 98, n. 2 (1971).

For these reasons, we believe the court below was in error when it did not order the immediate production of these statements and that this inaction prejudiced appellant.

Judgment of sentence reversed and a new trial is granted.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the decision of this case.