346 A.2d 545

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Paul C. DAWSON, Appellant.**

Supreme Court of Pennsylvania.

Argued May 20, 1974.

Decided Oct. 30, 1975.

Hugh S. Rebert, Asst. Public Defender, York, for appellant.

Morrison B. Williams, First Asst. Dist. Atty., Donald L. Reihart, Dist. Atty., York, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, J.

This is a direct appeal from the judgment of sentence imposed upon the appellant, Paul C. Dawson, following his conviction by a jury in York County of murder in the second degree.

Initially, Dawson complains the trial evidence was insufficient to warrant his conviction. We are not so persuaded. While the finding of Dawson's guilt of the crime depended solely on circumstantial evidence, it has long been established in this jurisdiction that such evidence may be of sufficient quantity and quality to establish guilt of a crime beyond a reasonable doubt. See *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Wentzel*, 360 Pa. 137, 61 A.2d 309 (1948). The evidence in this case meets this standard. The Commonwealth's evidence established the following facts.

The victim of the killing on which the prosecution was based was one Michael Joseph Pillo. For some months prior to Pillo's death, the appellant Dawson carried on an illicit relationship with Pillo's wife, unbe-

known to Pillo, and expressed his love for Mrs. Pillo and a desire to marry her. On March 13, 1971, when Pillo arrived home from work, he was greeted by Dawson and Mrs. Pillo and presented with a letter that had arrived by mail that day, purporting to offer him employment as a night watchman at a sewage plant construction site in Springettbury Township, York County. The letter was typed by someone other than a trained technician and suggested that Pillo report to the construction site that evening between 7 and 7:30 p. m. Pillo told Dawson and Mrs. Pillo of the contents of the letter and of his intention to go to the construction site that evening as suggested.

Dawson left the Pillo home about 6:15 p. m. in his automobile. Pillo left in his automobile about fifteen minutes later. Shortly thereafter, Pillo stopped at a political club, discussed the new job opportunity with some friends for a few minutes and told them he was then on his way to the construction site.

Pillo did not return home that night. He was reported missing and efforts to discover his whereabouts proved unsuccessful immediately. Two days later his dead body was found in a newly covered shallow grave in a woodland in Conewago Township, located several miles away from the sewage disposal construction site. A post mortem examination disclosed the existence of two bullet wounds in the body, and a "stellate laceration" on the top of the skull apparently caused by a blunt instrument. One of the bullet wounds extended from the back of the body into the aorta causing death. That same afternoon, Pillo's automobile was discovered and retrieved from an open quarry hole which was filled with water and located about one-eighth of a mile from the sewage disposal construction site.

During their investigation the police discovered dark colored spots in the soil in the area of the sewage disposal construction site, and also the cartridge case of a spent

.22 calibre bullet. Subsequent laboratory tests demonstrated the dark colored spots in the soil were caused by human blood, Type A, the same blood type as Pillo.

On March 23, 1971, a search of Dawson's automobile uncovered a stained blanket. Laboratory tests established that some of these stains were caused by human blood, Type A. On March 25th, a more thorough search of the vehicle uncovered a wooden hatchet handle and a plastic tool kit, both of which were stained with blood. Similar stains were discovered on the edge of the trunk opening of the vehicle and on a Prestone Anti-Freeze can found in the trunk itself. A cartridge case of a spent .22 calibre bullet was also found on the rear seat of the vehicle. Subsequent ballistic tests established that this cartridge, as well as the cartridge found in the area of the construction site, was fired from a .22 calibre rifle owned by Dawson and his brother, Paul. On the day Pillo was last seen alive, this rifle was kept in the home of Dawson's mother and stepfather with whom he resided. His brother, Paul, resided elsewhere.

While none of the foregoing facts taken singly would be sufficient to establish Dawson's guilt, the totality thereof and the reasonable inferences arising therefrom were legally sufficient to render Dawson's guilt an issue for the jury. Cf. *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1973); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971).

■ Dawson also complains of the denial of his motion for a new trial on the basis of after-discovered evidence. This motion presented to the court six days after the jury's verdict included a typewritten statement signed and sworn to by one Leroy J. Kibbler, stating that he and his wife had on several occasions during 1970 and 1971 observed "a white colored Chevrolet very similar to or the same as the motor vehicle owned by Michael Pillo at the ore hole or quarry located at the intersection of

Mt. Zion and West Sherman Street in Springettbury Township." It is urged that this evidence would show Pillo frequented the construction site area before the date of his death and contradicts the Commonwealth's theory and position at trial that Pillo was "lured" to the construction site.

In *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975), we recently reiterated the principle that in order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence, inter alia, must be such as would likely compel a different result than that reached at trial. See also *Commonwealth v. Schuck*, 401 Pa. 222, 164 A.2d 13 (1960). Even accepting the contention, that the newly discovered evidence would show Pillo was not "lured" to the death site, we discern no error or abuse of discretion on the part of the trial court in denying the motion under discussion, and its conclusion that the evidence was not likely to compel a different result than that reached by the jury.

We have considered the remaining assignments of error which have been properly preserved for appellate review and find nothing which warrants a reversal of the conviction or judgment.

Judgment affirmed.