389 A.2d 560
**COMMONWEALTH of Pennsylvania**
v.
**C. Alton WADE, Jr., Appellant.**
Supreme Court of Pennsylvania.
Argued April 15, 1977.
Decided July 19, 1978.

164

John R. Merrick, Public Defender, Kevin J. Ryan, Richard E. Moose, Asst. Public Defenders, for appellant.

George C. Zumbano, West Chester, Asst. Dist. Atty., Joan D. Lasensky, Berwyn, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

Appellant, C. Alton Wade, Jr., was convicted by a jury of voluntary manslaughter. Post-trial motions were denied and Wade was thereafter sentenced to a term of imprisonment of five to ten years. This direct appeal followed,[1] in which appellant raises several trial errors deemed to require a new trial. For the reasons stated hereafter, we believe these arguments are without merit. On the record before us, however, we are unable to resolve appellant's further charge that he was denied his constitutional right to effective representation by a lawyer at trial. Accordingly, we will remand the case to the trial court for the holding of an evidentiary hearing on this aspect of the case.

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.202(1).

Appellant's conviction stems from the death of a two-year old child, David Strong. David was the victim of abusive treatment by Wade and the child's mother, Regina Strong, with whom Wade lived. The Commonwealth's case against Wade depended primarily on the testimony of Strong. She testified that shortly after she and her three children moved into Wade's home, the couple, at Wade's suggestion, began to "discipline" David by use of a restraining leash and a horse whip. Medical testimony and photographs introduced at trial indicated extensive markings over the child's body as a result of this punishment. The cause of death, according to the Commonwealth's medical testimony, was an intestinal rupture, the result of a blunt force injury. Ms. Strong testified that shortly before the child's death appellant had "stomped" on David's stomach with his bare foot. Taking the stand in his own behalf, Wade denied this charge. Cross-examination by his lawyer of prosecution witnesses suggested that the cause of death was a fall sustained by David on the day of his death, and Wade testified that Regina Strong, the child's mother, had told him of such a fall. Wade also testified that it was Strong who assumed responsibility for the disciplining of the children, including David. The jury chose to believe the Commonwealth's version of the death and returned a verdict of guilty.

Appellant first contends that the evidence was insufficient to establish guilt beyond a reasonable doubt. This is so, allegedly, because the testimony of Regina Strong was self-serving and inherently unbelievable. Having reviewed the record, we are satisfied that the totality of the Commonwealth's evidence, along with all reasonable inferences arising therefrom, was legally sufficient to present a jury question. *See, e. g., Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Dawson,* 464 Pa. 254, 346 A.2d 545 (1975). Whether Strong's testimony was worthy of belief was an issue for the jury and we will not disturb its findings. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976). We reiterate that the testimony of a partner in crime, even if uncorroborated, can be sufficient

to convict. *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972); *Commonwealth v. Bruno,* 316 Pa. 394, 175 A. 518 (1934).

Appellant asserts that the Commonwealth intentionally withheld exculpatory material from him. *See, e. g., Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The claim is with regard to a statement given to the police by a prosecution witness, one Charlotte Hyatt.[2] The statement made reference to an admission by Regina Strong that only she disciplined her children. In light of Strong's earlier testimony,[3] however, the requested statement was cumulative only and not of such a nature as to affect materially any of the issues at trial. Accordingly, there arose no duty on the part of the prosecution to bring the statement to light.[4] *Cf. United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

2. We note that the prosecution did in fact furnish a copy of the statement to the defense at the time Ms. Hyatt was called as a prosecution witness. Compare *Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971). The appellant, however, asserts that *Brady, supra,* requires the production of such evidence prior to trial. We know of no such rule. Whether a failure to produce the exculpatory evidence until after trial has commenced would constitute reversible error would necessarily depend on the circumstances, including the reason for the delay and the resultant prejudice to the defense.

3. The earlier testimony of Regina Strong had clearly established that for almost a month following David's death she had assumed sole responsibility for the earlier disciplining of the children and for the injuries to David. The statement of Charlotte Hyatt did no more than corroborate this uncontradicted admission.

4. Indeed, Pa.R.Crim.P. 310, as it existed at the time of trial, specifically provided:
 "In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth."
 *See also Commonwealth v. Branham,* 467 Pa. 605, 395 A.2d 766 (1976).
 Rule 310 has now been superseded by Pa.R.Crim.P. 305 (effective as to cases in which the indictment or information is filed on or after January 1, 1978) to make express provision for the discovery and

In a related argument, appellant claims prejudice as a result of the Commonwealth's failure to produce, upon request, a pretrial statement given to the prosecution by Regina Strong. *See Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971). It appears, however, that the statement was no more than the "scribbled" notes of an assistant district attorney of a conversation he had had with Ms. Strong and which he had discarded before trial and before the demand. In the past we have required production only of those pre-trial statements which are verbatim notes of a witness' statements.[5] *See Commonwealth v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971). We have declined to extend this rule to a situation, such as the one here, which involves the notes of a district attorney, subject as they are to that lawyer's "selection, interpretation and recollection." *Commonwealth v. Cain,* 471 Pa. 140, 154, 369 A.2d 1234, 1241 (1977) (opinion in support of affirmance). See also *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970).

Appellant makes several allegations of error pertaining to the trial court's rulings on evidentiary matters:

(1) Wade argues that he was unduly prejudiced when the district attorney allowed a riding crop to be seen by the jury.[6] The riding crop was marked as an exhibit and was offered in evidence, but the offer was withdrawn upon

disclosure of exculpatory evidence material to the guilt or innocence of a defendant. See *Brady v. Maryland, supra.*

5. This policy is now embodied in sub-section (B)(2)(b) of Rule 305, see n.4, *supra,* which provides:

"*Discretionary with the Court:* In all court cases, if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

\* \* \* \* \* \*

"(b) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;"

6. The appellant also questions the Commonwealth's use of a cane. It does not appear from the record, however, that the cane was ever displayed to the jury or that any reference was ever made to the cane during the examination of any witnesses.

objection by defense counsel. Initially we note that there is no basis for an allegation of bad faith on the part of the prosecutor, as a serious effort was made to lay a proper foundation for the introduction of the crop. *Cf., Commonwealth v. Johnson*, 450 Pa. 575, 301 A.2d 632 (1973). *See also* ABA Standards Relating to the Administration of Criminal Justice, The Prosecution Function, § 5.6(c) and (d). Moreover, appellant's counsel did not object or request an offer of proof when the riding crop was marked as an exhibit, but instead proceeded to question witnesses concerning the crop. Appellant may not now complain.

 (2) Appellant having taken the stand in his own behalf, was asked the following questions on cross-examination:

"Q. Mr. Wade, you are currently married, as I understand it, is that correct?

A. That is right.

Q. You separated from your present wife somewhere around June of 1973?

A. Yes, sir.

Q. Is that correct? And is it correct that your wife has filed an action in divorce against you, is that correct?

MR. CADMUS: I object to this. It is entirely immaterial.

THE COURT: Yes, that objection will be sustained.

Members of the jury, that was only a question. Therefore, not evidence. But you will disregard it." (N.T. 857–858).

The last question, contends appellant, was seriously prejudicial. We note, however, that defense counsel's objection to the question was sustained and therefore the jury never was told whether a suit in divorce had been brought or what the basis of the action might have been. Moreover, a cautionary instruction was immediately given to the jury to ignore the question. The action of the trial court was, if anything, overly favorable to the defense, since on direct examination

of Wade his lawyer had probed into Wade's marital status and thus opened the door to the cross-examination.

(3) It is also alleged that the trial court erred in allowing the prosecution to adduce rebuttal testimony by one Joseph Thornton. Thornton testified that prior to trial appellant had confided to him an intention to fabricate testimony regarding the victim's fall from a fence shortly before his death. Wade argues that since the possibility of such an accident was first elicited during the cross-examination of a prosecution witness, Regina Strong, it may not properly be characterized as part of the defendant's case and hence rebuttal testimony should not have been admitted. See Commonwealth v. Hickman, 453 Pa. 427, 309 A.2d 564 (1973). Wade, however, did testify that Regina Strong had told him that David suffered a fall from the fence. Additionally, Wade's lawyer cross-examined the Commonwealth's medical expert concerning the possibility that the victim's injuries were consistent with such a fall and introduced into evidence two pictures of the fence. It is clear that the defense was attempting to establish an alternative theory as to the cause of death and we find no abuse of discretion in allowing rebuttal testimony as to the possible source of that theory. See, e. g., Commonwealth v. Tervalon, 463 Pa. 581, 345 A.2d 671 (1975); Commonwealth v. Hickman, supra.

(4) The trial court allegedly committed reversible error when it allowed into evidence eight color photographs of the dead body of the infant victim. It is argued that the pictures were inflammatory and prejudicial. In determining the admissibility of such evidence a trial judge should first determine whether the photographs are inflammatory; if they are found not to be, the admissibility of the pictures is to be governed by the normal considerations of relevancy. If the trial judge finds that the proffered pictures are of an inflammatory nature, the inquiry must then proceed to determining whether their evidentiary value outweighs the likelihood that they might prejudice the jury. See Commonwealth v. Smith, 477 Pa. 505, 384 A.2d 1202 (1978); Commonwealth v. Hilton, 461 Pa. 93, 99, 334 A.2d

648, 651 (1975) (concurring opinion of POMEROY, J., joined by four members of the Court); *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968). In the case at bar, the challenged photographs portrayed various parts of the decedent's body illustrating the nature and extent of the bruises and contusions, markings which would not have been readily detectable in a black and white picture. There was no blood or distortion of facial features, which were depicted in only one snapshot. Our examination of the pictures leads us to conclude that the trial court acted properly within its discretion in not finding the pictures inflammatory. Even were we to go on to the second phase of the admissibility test (assuming *arguendo* that the pictures were inflammatory) it is manifest that their relevance outweighed any possibility of prejudice. The photographs were necessary to show not only the extent of the beatings, but also, and of more importance, to illustrate that the bodily markings were consistent with the Commonwealth's theory that a horse whip and restraining leash were used to inflict them. Evidence of this sort was particularly pertinent in light of the defense theory that the injuries suffered by the victim might have been the result of a fall.

Wade's final argument, advanced through new appellate counsel, alleges a series of omissions by trial counsel which are said to establish that Wade was denied his right to effective representation.[7] As we stated in *Commonwealth v. Hubbard, supra,* before a defendant on direct appeal is entitled to relief under a theory of ineffective assistance of trial counsel, it must appear that the lawyer's act of omission or commission was arguably ineffective representation, and that it is likely that such ineffectiveness was prejudicial to the defendant. To resolve these matters it is frequently necessary for an appellate court to remand

7. Since new counsel raised the ineffectiveness claim at the first stage of the proceedings in which he represented appellant, the issue is properly before the Court. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

to the trial court for an evidentiary hearing. Such a remand is not necessary, however, when it is clear from the record that the actions or non-actions claimed to constitute ineffectiveness are devoid of merit or were within the realm of trial strategy. *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976). Applying this standard to the present allegations of ineffectiveness, we think it clear that most of the trial counsel's actions which are now challenged were either unexceptionable or were within the realm of sound strategy.[8]

One of the charges of ineffectiveness involves trial counsel's failure to produce an alibi witness, Sam Sterly, who could have testified as to appellant's presence elsewhere during the time when the fatal beating allegedly occurred. In view of the fact that the outcome of the case was primarily dependent on the credibility of appellant's version of the incident over against that of Regina Strong, we must conclude that the testimony of such an alibi witness could have been of great importance in lending support to the position of the defense. It does not appear, however, whether the failure to call the witness was the result of deliberate choice or of oversight. *See Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). Accordingly, we find it necessary to remand the case to the lower court for an evidentiary hearing to determine the basis of trial counsel's omission in this regard. *See Commonwealth v. Hubbard, supra.*[9]

8. Wade alleges that trial counsel, to have met the standard of effective representation, should have (1) moved pre-trial to suppress certain evidentiary items; (2) demurred to the evidence at the close of the Commonwealth's case and raised various objections and preserved unspecified issues for appeal; and (3) requested a mistrial following certain alleged improprieties on the part of the prosecutor involving improper questioning and the failure to produce certain statements given to police by prosecution witnesses. We have examined the record and find these allegations to be without merit.

9. Appellant properly raised this issue in post-trial motions following the appointment of new counsel. The claim was denied by the trial court because that court concluded that the record was insufficient to resolve the claim and that in order to do so an evidentiary hearing would be necessary. Judicial efficiency would have been better

The judgment of sentence is vacated and the case is remanded to the trial court for an evidentiary hearing to determine the basis of trial counsel's failure to call Sam Sterly as an alibi witness for Wade. Should the trial court conclude that this was due to ineffectiveness of counsel, a new trial shall be granted; if counsel is deemed to have been effective, the judgment of sentence shall be reinstated, subject to recalculation of the sentence so as to commence as of the time appellant was incarcerated on the present charges.[10] Thereafter, either party may appeal.

ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The majority concludes in this case that the pictures introduced into evidence were not inflammatory. It is unfortunate that the published opinions of this Court do not contain an accurate reproduction of photographs when the issue is whether the photographs are inflammatory. Without such reproduction, the readers and critics of our opinions are handicapped in deciding whether justice is being dispensed with an even hand or whether some citizens are being deprived of equal protection of the law.

served had the trial court held such a hearing and passed upon the merits of the claim at that time.

**10.** We presently have before us a petition for habeas corpus filed by appellant in which the propriety of his sentence is challenged. The basis of the claim arises out of the fact that appellant's sentence of five to ten years on the manslaughter conviction was to be served consecutively to a prior sentence of eighteen to thirty-six months imprisonment imposed on an unrelated charge of receiving stolen property. On appeal, however, that conviction for receiving stolen property was vacated and Wade was discharged. *See Commonwealth v. Wade*, 475 Pa. 399, 380 A.2d 782 (1977). Since appellant was arrested and incarcerated on the murder charge on December 6, 1973, he is entitled to credit for the period of confinement served after that date. Accordingly, should the judgment of sentence be reinstated, the effective date of appellant's manslaughter sentence is to be recalculated as of the time Wade's incarceration commenced on this charge.

Since the pictures are not reproduced in our opinions, I have in the past attempted to verbally describe the content of pictures before us. *See Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977) (concurring and dissenting opinion of Manderino, J., joined by Roberts, J.). Although the verbal description method is inadequate, I must again in this case attempt to describe one of the photographs which the majority says is not inflammatory.

Have you, the reader, ever known a person who would not order fish for dinner at a restaurant because it is known that the fish is served with its lidless eye staring up from the plate? I am sure the answer for most of the readers of this opinion will be in the affirmative. One of the pictures in this case, of the deceased child, depicts the child in a prone position with the body obviously in a limp state; the eyelids of the dead child are open and the child's eyes stare vacantly at the observer. The picture is one of the most inflammatory pictures I have observed since sitting on this Court. Yet, the majority says the picture is not inflammatory. This is another case in which the majority should simply state that it is abolishing the inflammatory picture rule rather than affirm a decision by stating that a picture is not inflammatory when there is no basis in reason for that conclusion.

I have joined the majority of this Court in concluding in other cases that a picture is not inflammatory even though the picture is of a dead person. I have done so, however, only in those cases where from a viewing of the picture, it cannot be determined that the person depicted is dead. I have also joined when the face of the individual is not visible. In these cases, although it may be known from other evidence that the person depicted in the picture is dead, that fact can not be determined by viewing the picture alone.

There is no doubt that the degree of sensitivity possessed by jurors varies considerably as to the subject of death.

There are persons who are not emotionally affected in any way by viewing a dead body in whatever state. On the other hand, I am certain we are all aware of occasions when the presence of a dead body causes people to avoid a room or the viewing of the body. Because sensitivities vary greatly, a Court cannot dispense justice with an even hand when it decides a picture issue based on the sensitivities of the individual members of that Court. For this reason the law for many years would not, except in the clearest of cases, deem a picture noninflammatory when the picture depicted a dead person and that fact could be determined from the picture itself. Any picture that could be said to be inflammatory was not to be admitted unless it had "*essential* evidentiary value." (Emphasis added.) *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 381, 317 A.2d 225, 226 (1974). The majority today, without addressing whether the pictures were *essential* to the prosecution's case, upholds their admissibility. I must dissent. Slowly in the last several years, the Court has in effect nullified the picture rule which worked well for many years. In doing so, it allows unfair emotional waves to cast doubt on the rational process by which our system of justice is to prove a man guilty beyond a reasonable doubt.