392 A.2d 1290

**COMMONWEALTH of Pennsylvania**

v.

**Robert MIMS, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued May 22, 1978.
Decided Oct. 5, 1978.

276

Louis Lipschitz, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Stephen Seeling, Asst. Dist. Attys., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Robert Mims, was convicted by a jury of murder of the first degree, arson, two counts of aggravated robbery, three counts of aggravated assault and battery, and conspiracy. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction, with a concurrent five to ten year sentence for the arson conviction. Judgments of sentence were suspended on all other convictions.

Appellant's convictions resulted from a January 4, 1971, robbery of Dubrow's Furniture Store at 419 South Street in Philadelphia. During the incident, appellant and his seven cohorts shot and killed one employee, shot and wounded another, doused yet a third with gasoline and set him on fire. All employees were stripped of their personal belongings.

Appellant raises numerous allegations of error. As we find that appellant has been denied the effective assistance of counsel, we need not reach his remaining allegations of error.[1]

1. Appellant's brief contains the following other allegations of error:
   "1. The In-Court identification of appellant was unnecessarily suggestive and deprived appellant of a fair trial.
   "2. The pre-trial photographic display was unnecessarily suggestive and permitted a substantial likelihood of mistaken identification.
   "3. The Commonwealth failed to satisfy its burden of proof that the photographic display was not unnecessarily suggestive and conducive to mistaken identification.
   "4. The admission of prejudicial hearsay and the misrepresentation of critical facts concerning identification deprived appellant of a fair trial.
   "5. The misconduct of the prosecuting attorney deprived appellant of a fair trial
   "(a) Arousing religious prejudice
   "(b) Reference to other arrests
   "(c) Improper argument to the jury
   "6. The court erred in permitting Miss DiMeo, an identification witness, to testify after she had violated the court's sequestration order and viewed the defendant in the hallway.
   "7. Error in Limiting Cross-Examination.

Appellant alleges that his trial counsel was ineffective for failing to object to an unduly suggestive in-court identification procedure. The facts are as follows.

At the time of the criminal episode, Louis Gruby was employed at Dubrow's as a "greeter." Gruby would ask prospective customers what they were looking for and then direct them to the proper area and salesmen. Gruby and another employee, Audrey Dimeo, were the only employees able to identify any of the participants in the crime. In fact, three days after the robbery, Gruby aided a police artist in making a composite sketch. Appellant was nonetheless able to elude capture until September 20, 1974.

At trial, appellant was placed along with seven other men with similar characteristics in the front row of seats in the

      "(a) At the suppression hearing
      "(b) At trial
  "8. Excessive participation by the learned trial judge deprived appellant of a fair trial.
  "9. Denial of the right to a public trial.
 "10. Error in withdrawal of manslaughter counts.
 "11. Errors in the charge of the court.
      "A. Reasonable doubt
      "B. Alibi
 "12. The denial of appellant's request for an in-court pre-trial lineup deprived him of due process of law.
 "13. Denial of the effective assistance of counsel.
      "(I) At the suppression hearing
      "A. Failure to request a timely pre-trial lineup
      "B. Failure to object to prejudicial hearsay
      "C. Failure to investigate and produce necessary witnesses
      "D. Failure to insure that appellant received a public trial
      "E. Failure to adequately cross examine
      "F. Failure to suppress the composite picture
      "(II) At trial
      "A. Failure to object to use of composite sketch
      "B. Failure to object to prejudicial hearsay and improper suggestion
      "C. (The issue dealt with herein)
      "D. Failure of counsel's duty to call witnesses, investigate, and present a substantial defense
      "E. Failure to file a motion to suppress
      "F. Failure to object to prosecutorial misconduct
      "G. Failure to object to interrogation by the court
      "H. Failure to object to the withdrawal of the manslaughter indictment
      "I. Failure to submit points for charge."

courtroom rather than at the defense table. Mr. Gruby testified that during the incident, he had an ample opportunity to see appellant. He further testified he had seventeen years of army intelligence training involving the observation and description of persons. Gruby stated that he was "absolutely" certain of his identification. However, when asked to identify appellant, Gruby identified another individual as the person participating in the robbery. At the time of the identification, no one informed Gruby that the man he identified was not appellant.

Following a very brief cross-examination by defense counsel, the district attorney showed Gruby the composite sketch which was made three days after the criminal episode. The following exchange then took place:

"BY THE COURT:

"Q. Mr. Gruby,—

"A. Yes, sir.

"Q. —since the incident on January the 4th that took place that you've just described, have you seen the man that you identified as Mr. Mims, since that incident in the store?

"A. I have never seen the man, no, since that incident.

"Q. You've never seen him in person since that incident.

"A. Not that I can recall, sir.

"Q. And that's four years and some months ago; is that correct?

"A. Yes. And I've been away from Dubrow's now for over—next month it will be two years since I retired.

"Q. And you described certain facial characteristics that you recall stood out in your mind, is that correct,—

"A. Yes, sir.

"Q. —to the police? And you also described the height; is that correct?

"A. Yes, sir.

"Q. All right. Now, Mr. Gruby, in response to the District Attorney's question, you went down and—he asked you if you could identity Mr. Mims in the

courtroom, and you went down rather hurriedly and did so.

"Now, I'm going to ask you to do it again and to do it slowly and take your time. If you don't mind. If you will go down and take your time, watch your step, and look closely at the people. Don't answer anything and look closely at the people. Don't answer anything until you've taken a good close look.

"A. Could I change my selection?"

Gruby then identified appellant as the individual who participated in the robbery-killing.

At trial, defense counsel made no objection about the trial court's role in identifying appellant. Present appellate counsel began representing appellant at post-verdict motions, where he challenged trial counsel's effectiveness for failing to object to the in-court identification. See *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975).

In *Com. ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352 (1967), we said:

" . . . our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in original.) (Footnote omitted.)

The issue before us is thus whether trial counsel had a reasonable basis for failing to object to the court's role in the in-court identification and whether such failure to object prejudiced appellant.

Appellate counsel argues that the questioned procedure was in error for two reasons: (1) the trial court overstepped its normal role and acted as an advocate, and (2) that the

court's advocacy was unduly suggestive, thus tainting the in-court identification. Appellant believes the entire procedure violated due process, which deprived him of a fair trial, and that trial counsel was ineffective in not objecting to the trial court's conduct.

In *Commonwealth v. Butler,* 448 Pa. 128, 134–35, 291 A.2d 89, 92 (1972), we stated:

" . . . If a judge followed the practice which this judge advocated here, a practice of questioning every witness whom the judge did not believe to be telling the truth, while questioning no other witnesses, it would be tantamount to telling the jury his views of which witnesses were to be believed. Credibility is solely for the jury. Just as a trial judge is not permitted to indicate to the jury his views on the verdict that they should reach in a criminal case, *Commonwealth v. Motley,* 448 Pa. 110, 289 A.2d 724 (1972), *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972), similarly he is not permitted to indicate to a jury his views on whether particular witnesses are telling the truth.

"What we said in *Commonwealth v. Myma,* 278 Pa. 505, 123 A. 486 (1924), is still pertinent: 'Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but, where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions, or conduct, contravenes the orderly administration of justice. It

has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.' *Commonwealth v. Myma, supra,* at page 508, 123 A. 486."

In the instant case, while the trial court's actions did not suggest that Gruby was lying, the reasoning in *Butler* is nonetheless persuasive. Here, the judge in effect told both Gruby and the jury that the witness identified the "wrong man." This amounts to judicial advocacy which was disapproved of in *Butler.* By the court telling Gruby to try again in his identification after looking at the composite sketch, it goes without saying that the procedure was unduly suggestive. Once Gruby identified appellant, the jury had to believe that the court itself considered appellant the guilty party. Under these circumstances, where only one other witness identified appellant, we are convinced that the court below improperly injected itself into the court proceeding.

Keeping this in mind, we believe that trial counsel could have no reasonable basis for failing to object to the court's actions. We are thus convinced that appellant was denied the effective assistance of counsel.

Judgments of sentence reversed and a new trial is granted.

POMEROY, J., files a dissenting opinion.

POMEROY, Justice, dissenting.

I agree with the majority that the action of the trial court in encouraging a second attempt by a prosecution witness to identify the defendant in the courtroom was, absent some reason not apparent from the transcript, an improper exercise of the trial court's function. I also accept that trial counsel's non-objection to this judicial intervention presents, under the particular facts of this case, an arguable instance of ineffective assistance of counsel. See *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). I cannot, however, agree that an arguable conclusion is enough, by itself, to justify this Court in awarding a new trial. Hence this

dissent. Cf. *Commonwealth v. Ceasar,* 478 Pa. 575, 576, 387 A.2d 471, 472 (1978) (dissenting opinion of Pomeroy, J.).

This Court has recognized that claims of ineffectiveness of defense counsel may, under certain circumstances, be raised on direct appeal. See *Commonwealth v. Hubbard, supra; Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). Nevertheless, we have acknowledged that it is often impossible to resolve claims of ineffectiveness on the basis of a cold record and have remanded such cases to the lower court in order that an evidentiary hearing might be held.* See *Commonwealth v. Wade,* 480 Pa. 160, 389 A.2d 560 (1978); *Commonwealth v. Santiago,* 473 Pa. 14, 373 A.2d 455 (1977); *Commonwealth v. Hubbard, supra.* As we stated in *Commonwealth v. Turner,* 469 Pa. 319, 324, 365 A.2d 847, 849 (1976):

"The problem in this case, as in most cases where the claim of ineffective assistance of counsel is raised on direct appeal, is that we have before us no record of any hearing at which is delineated trial counsel's reasons for taking the steps later challenged. Where the record on appeal clearly shows that there could have been no reasonable basis for a damaging decision or omission by trial counsel, then of course the judgment must be vacated and appropriate relief, such as allowing the filing of post trial motions or the ordering of a new trial, granted. Where, on the other hand, it is impossible to tell from the record whether or not the action of trial counsel could have had a rational basis, the appellate court will vacate the judg-

* Of course, where ineffectiveness of counsel is alleged as a ground for post-conviction relief, an evidentiary hearing is normally held by the trial court as a prelude to its resolution of the claim. See the Act of January 25, 1966, P.L. (1965) 1580, § 9, 19 P.S. § 1180–9 (Supp.1978). In such cases an appellate court is in a position to resolve claims of ineffectiveness on the basis of the trial record as augmented by the post-conviction hearing record. This is normally not the situation where ineffectiveness is raised for the first time on direct appeal, although a record on such a claim can and sometimes should be made at a hearing ancillary to post-trial motions before they are decided by the trial court. See *Commonwealth v. Wade,* 480 Pa. 160, 173 n. 9, 389 A.2d 560, 567 n. 9 (1978) (plurality opinion).

ment, at least for the time being, and remand for an evidentiary hearing at which trial counsel may state his reasons for having chosen the course of action taken." (Footnotes omitted.)

I have no confidence that the claim of ineffectiveness in the present case can be intelligently resolved merely by reading the transcript of testimony quoted in the majority opinion. While the notes of testimony do afford a basis for the prima facie but tentative conclusion of "arguable" ineffectiveness, they do not allow a definitive, informed decision of ineffectiveness. As we observed in *Hubbard, supra,* "the failure to object could have been born of a reasonable, calculated trial strategy." 472 Pa. at 285, 372 A.2d at 699. For instance, counsel may have felt confident that the misidentification of his client would be repeated by the witness—a development which would considerably strengthen the possibility of acquittal.

In my view the proper action for this Court to take at this juncture is to remand to the trial court for an evidentiary hearing at which time the basis of counsel's omission may be explored, and a determination with respect thereto made by the trial court.