[J-2-2015][M.O. – Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 692 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of Sentence |
| | : | entered on 12/18/13 in the Court of |
| | : | Common Pleas, Criminal Division of |
| v. | : | York County at No. CP-67-0003547- |
| | : | 2012 |
| ARIC SHAYNE WOODARD, | : | |
| | : | |
| Appellant | : | ARGUED:  March 6, 2015 |

## DISSENTING OPINION

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  December 3, 2015**

I respectfully differ with the majority's conclusions that the autopsy photographs of the body of the child victim were not inflammatory, as well as with its approval of the trial court's decision to admit them.  *See* Majority Opinion, *slip op.* at 18-19.

Many jurisdictions, including Pennsylvania, have maintained a very liberal approach to the admission of photographs of murder victims, affording trial courts wide discretion and latitude.  *See generally* BARBARA E. BERGMAN, NANCY HOLLANDER & THERESA M. DUNCAN, 3 WHARTON'S CRIMINAL EVIDENCE §16.7 (15th ed. 2014).  To my knowledge, however, there are no rational metrics available for the assessment; rather, the analysis generally proceeds in the form of a series of rather abstract and conclusory pronouncements.  *Cf.* KENNETH W. GRAHAM, JR., 22A FED. PRAC. & PROC. EVID. §5215 (2d ed. 2015) (alluding to the phenomenon of "*ipse dixit* cases – those where the judges tell us that evidence is or is not 'prejudicial' and expect us to accept it on nothing more

than the court's say-so").  Such dispositions are vulnerable to the reasonable criticism that they are grounded more upon "instinct and folk knowledge" than upon the psychological impact of graphic photographs upon lay jurors.  Susan A. Bandes & Jessica M. Salerno, *Emotion, Proof and Prejudice: The Cognitive Science of Gruesome Photos and Victim Impact Statements*, 46 ARIZ. ST. L.J. 1003, 1021 (2014).  They also reflect another downside of according largely unbridled discretion to the trial courts, in that decisions material to the outcomes of individual cases can be made on a widely disparate basis.  *See generally* GRAHAM, 22A FED. PRAC. & PROC. EVID. §5212 (discussing long-acknowledged drawbacks associated with broad-scale allocations of judicial discretion).

I also note that emerging evidence, derived from psychological studies, suggests that disturbing photographs of murder victims have a substantial effect on jurors in terms of fostering anger, shallower mental processing, greater reliance on shortcuts and stereotypes, and enhanced certainty even in the absence of any material probative contribution of the photographic evidence in question.  *See* Bandes & Salerno, *Emotion, Proof and Prejudice*, 46 ARIZ. ST. L.J. at 1026-27, 1045-48 (citing, *inter alia*, D.A. Bright & J. Goodman-Delahunty, *Gruesome Evidence and Emotion: Anger, Blame, and Jury Decision-Making*, 30 LAW & HUM. BEHAV. 183 (2006), and Jennifer S. Lerner & Larissa Z. Tiedens, *Portrait of the Angry Decision Maker: How Appraisal Tendencies Shape Anger's Influence on Cognition*, 19 BEHAV. DECISION MAKING 115, 122 (2006)).  Critically, there also is evidence that the emotional influence "probably operates outside of jurors' conscious awareness," *id.* at 1028, thus raising questions about the ameliorative effect of limiting instructions issued by trial judges.  The studies suggest a significant possibility that conventional judicial attitudes concerning the degree of impact of graphic depictions of death upon decision-making by lay jurors may be misplaced.

While obviously decisions about admissibility may depend upon the individualized case circumstances, particularly in light of the uncertainties and emerging evidence, I believe that appellate courts should impose some constraints upon the introduction of graphic photographs into the courtroom. *Accord State v. Collins*, 986 S.W.2d 13, 21 (Tenn. Crim. App. 1998) ("There is an increasing concern that courts are becoming too liberal in their admission of inflammatory autopsy photographs[.]"). *See generally* Hon. Richard M. Markus, *A Better Standard for Reviewing Discretion*, 2004 UTAH L. REV. 1279, 1295 (2004) (positing that "[a]n appellate court that clarifies the boundary of those circumstances [justifying the exercise of discretion] greatly assists trial courts that must follow its lead"); David P. Leonard, *Appellate Review of Evidentiary Rulings*, 70 N.C. L. REV. 1155, 1228-29 (1992) (criticizing the "extreme deference [that] now defines the relationship of appellate to trial courts in the application of evidence rules" and advocating a stronger role for the appellate courts in enforcing the values undergirding such rules). Moreover, the concern of the trial court presiding at Appellant's trial that restraints resulting in the exclusion of some pictures would "reward a perpetrator" is misplaced, Order of Oct. 9, 2013, in *Commonwealth v. Woodard*, No. CP-67-CR-0003547-2012 (C.P. York), since, during criminal trials, courts are bound to operate under the presumption of innocence relative to the defendant whose liberty or life is at stake.

Notably, in *Commonwealth v. Walker*, 625 Pa. 450, 92 A.3d 766 (2014), this Court recently retreated from a bright-line evidentiary prohibition in view of emerging social science in tension with that rule's underpinnings. *See id.* at 471-95, 92 A.3d at 779-93. I maintain that greater introspection, on the part of appellate courts, along these lines is warranted on a broader scale. *Accord Commonwealth v. Alicia*, 625 Pa. 429, 448, 92 A.3d 753, 765 (2014) (Saylor, J., dissenting) ("*Walker*, in my view, reflects

an emerging reluctance to adhere reflexively to nineteenth-century conventions and axioms, amidst growing evidence produced by social and behavioral scientists (among others) that these may have been precipitous.").

In terms of the present case, I begin with the proposition that color photographs of a nude, battered, open-eyed, deceased child on a slab, encompassing full body portraits and facial close-ups, should be regarded as inflammatory (or likely to evoke strong emotional reactions, including generating anger). *Accord Collins*, 986 S.W.2d at 21 ("[T]he inherent prejudice of admitting color photographs of a bruised, bloodied, nude, infant victim is apparent.").[1]  Such graphic, visceral portrayals of a dead child, in my view, create an unacceptable risk of influencing jurors to reach conclusions based on factors other than a strict application of the law to the facts.  Furthermore, I fail to appreciate why Dr. Land's descriptions of the nature and extent of the injuries would not have been sufficient absent the graphic facial close-up and full-body photographs. Indeed, at trial, the pathologist meticulously depicted the injuries suffered by the child-victim through his verbal testimony, before the autopsy photos were introduced.  *See*

---

[1] While I recognize that there are decisions of this Court which suggest to the contrary, from my point of view, the jurisprudence is inconsistent.  *Compare, e.g.*, *Commonwealth v. Wade*, 480 Pa. 160, 172, 389 A.2d 560, 566 (1978) (rejecting a challenge to the admission of photographs of a child-victim's body), *with Commonwealth v. Powell*, 428 Pa. 275, 279 & n.1, 241 A.2d 119, 121 & n.1 (1968) (alluding to the "emotional impact" that photographs of a deceased victim's body "would undoubtedly have on the jury," to a degree that limiting instructions were insufficient to alleviate the prejudice).  The variance, I believe, is exacerbated by the wide discretion allocated to trial courts in the first instance.

Although the *Powell* decision is distinguishable because there was little probative value in the photographs in the circumstances presented, the *Powell* Court obviously considered the disturbing photographs to be inherently inflammatory; whereas, the *Wade* Court pronounced that a set of photographs of a child-victim's body was "not inflammatory" in the first instance.

N.T., Oct. 22, 2013, at 888-912.[2]  From my point of view, Dr. Land's explanation during the pre-trial proceedings -- that he believed it was "imperative that the jury has the ability to see what I saw . . . so they can have a better understanding of the totality of the injuries," N.T., Oct. 4, 2013, at 33 -- represents little more than the sort of *ipse dixit* that should be eschewed by trial and appellate courts.  Again, I also regard the trial court's additional reward-the-perpetrator rationale as being inconsistent with the presumption of innocence.

For the above reasons, I would award a new trial and, accordingly, respectfully note my dissent.

---

[2] The main body of Dr. Land's direct testimony occurred before introduction of the photographs.  Throughout the subsequent publishing of the relevant photographs to the jury, the pathologist briefly recapped his previous testimony.  *See id.* at 920-26.