419 A.2d 623

COMMONWEALTH of Pennsylvania

v.

**Kennard Lee WATSON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 16, 1979.

Filed April 11, 1980.

608

Robert E. Gabriel, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Judge:

Appellant, Kennard L. Watson, was convicted after trial by jury of murder of the third degree and possession of instruments of crime generally. The charges arose from the fatal shooting of Willie Lattimore in a South Philadelphia bar on January 2, 1975. This direct appeal follows.

* Justice ROBERT N. C. NIX, Jr., of the Supreme Court of Pennsylvania, and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation. Judge DONALD E. WIEAND is sitting by special designation.

■ Appellant's first assignment of error is that the attorney for the prosecution unfairly prejudiced appellant's case by suggesting to the jury that decedent was shot in the back although the incontrovertible evidence established that the decedent was not struck in the back by the bullet. Supreme Court decisions have condemned attempts by prosecutors to suggest inferences adverse to the accused which are not reasonably supported by the evidence. *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972).

> While a prosecutor, in order to present the Commonwealth's case in the most favorable light, may make *fair* deductions and suggest to the jury *appropriate* inferences *from the evidence*, a society cannot permit its agent to attempt to prejudice the minds of the jury against the accused by making wholly unsupported inferences . . . (Emphasis in original text; footnote omitted). *Commonwealth v. Revty*, supra, 448 Pa. at 517, 295 A.2d at 302.

*See also, Commonwealth v. Smith*, 457 Pa. 638, 644, 326 A.2d 60, 62 (1974) (and cases cited therein).

A review of the instant record satisfies us that this principle of law was not violated in this case. The testimony of Barbara Gayle, an eyewitness, and Dr. Catherman, the pathologist, established that appellant fired at the victim's back. A sudden movement by the victim caused the entry of the projectile in the victim's side. Thus, although appellant is correct in stating that the bullet did not enter the victim's back, there was evidence to support the conclusion that he was shot from behind. Concededly, the attorney for the Commonwealth used the phrase "shot in the back" and that was inaccurate, nonetheless the inference sought to be advanced by the prosecutor's statements was that the victim was shot from behind and that was in accordance with the evidence.

■ Appellant's second contention is that the trial court erred in refusing to permit defense counsel on cross–examination to elicit the specific addresses (i. e., the street and house number) given to police by two eyewitnesses. At the scene of the murder, police questioned four eyewitnesses:

Sam Crosby, Barbara Gayle, James Alexander and Anthony Barnes. Gayle and Crosby testified for the prosecution. Detective Lynch, the investigating detective who interrogated the witnesses, testified that Alexander and Barnes gave him false addresses that, despite diligent police efforts to locate these two missing eyewitnesses, they could not be located and were not available as witnesses at trial. The detective's testimony was corroborated by the testimony of a second detective who also attempted to ascertain the whereabouts of the two missing witnesses.

On cross–examination of the first investigating detective, the defense sought to elicit the allegedly false addresses given to the detective by the two missing eyewitnesses. The prosecution objected and the trial court held a side bar conference on the issue of whether to permit the addresses to be divulged to the jury. The prosecution contended that the people who actually resided at the addresses given were fearful that they might in some way be harmed by the appellant or his associates if the addresses were revealed in open court. The trial court sustained the Commonwealth's position and directed counsel for the defense not to pursue that line of inquiry with the witness. However, the Commonwealth voluntarily disclosed the information to counsel at side bar. Thus, the defense had the capacity to conduct its own independent investigation to establish the validity of the Commonwealth's representation as to the unavailability of these witnesses.

Appellant argues that the restriction on cross–examination of the detective prevented the defense from demonstrating to the jury that the eyewitnesses were in fact available and subject to subpoena. Since the defense received the information it sought, the only possible complaint must concern the fact that the addresses were not supplied to the jury. The only relevance of these addresses in this trial was whether the witnesses in fact resided there. The Commonwealth produced evidence to show their efforts to locate them at the addresses given. The defense, having been supplied with the information, could have made an

independent investigation as to whether the eyewitnesses resided at the stated residences. Supplying the addresses to the jury would have added nothing to the question of whether these eyewitnesses in fact resided at the residences given at the time of their interrogation. Thus in view of the concern expressed by the Commonwealth, that disclosure in open court might threaten the safety of the occupants of the homes in question, it cannot be said that the trial court abused its sound discretion in restricting the cross–examination on this subject. *Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976); *Commonwealth v. Bailey,* 450 Pa. 201, 207, 299 A.2d 298, 301 (1973); *Commonwealth v. Robinson,* 433 Pa. 88, 249 A.2d 536 (1969).

█ Appellant next focuses upon the trial court's refusal to permit the defense to inspect the statements given to the police by the two missing eyewitnesses. This request was made at the close of the Commonwealth's case–in–chief and was opposed by the prosecution. The Commonwealth represented to the court that the requested statements did not contain information that was exculpatory for appellant and the court accepted these representations without conducting an *in camera* inspection of the statement. Appellant now charges that the court's ruling deprived him of his right to a fair trial and the effective assistance of counsel in that he was prevented from utilizing these statements as a possible means of locating the missing witnesses. The appellant's right to view these statements hinges upon whether they contain exculpatory information.[1] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Thus the question is whether the court could properly accept the

[1]. Appellant's reliance upon the language of the Supreme Court in *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965) and *Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971) is misplaced. In both *Smith* and *Kontos* the defense were seeking statements of witnesses who had testified at trial. Thus the *defense in those cases* were seeking the prior statements to examine them for possible basis to impeach the Commonwealth witnesses who had testified against the accused. In contrast, here since the witnesses were not produced at trial their credibility was not in issue, therefore there was nothing to impeach.

Commonwealth's representations in this regard without personally inspecting the documents in question. The answer is supplied by the Supreme Court's decision in *Commonwealth v. Gartner*, 475 Pa. 512, 525, 381 A.2d 114, 120–21 (1978) wherein the Court stated:

> A defendant is entitled to a court inspection of the Commonwealth's investigatory files only when there exists at least some reason to believe the inspection would lead to the discovery of evidence helpful to the defense. See *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977) (plurality opinion). Here, appellants made no showing that the court's inspection would reveal evidence helpful to the defense. The court's denial of appellants' request was proper. See *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

■ Here appellant offered no basis for the court to question the Commonwealth's representation that no exculpatory information was contained in the statements. Absent of a showing of some reason for believing that an inspection would lead to the discovery of evidence helpful to the defense the court was under no duty to conduct an *in camera* investigation. *Commonwealth v. Gartner, supra* ; *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Martin*, 465 Pa. 134, 165–66, 348 A.2d 391, 407 (1975) *cert. denied*, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).

■ Appellant's next contention is that the prosecutor committed reversible error when he referred in his summation to Detective Lynch's testimony that on the night of the crime the two missing eyewitnesses gave statements to the police which led to the arrest of appellant. This was an obvious attempt to use hearsay evidence to support the actions of the police in effectuating the arrest. Although the statements of the missing eyewitnesses were obviously hearsay and properly excludable where prompt objection is made, the defense allowed this testimony to be introduced by Detective Lynch on direct examination without objection. In the absence of any objection, at the time of the introduc-

tion of this testimony it was properly in evidence and the prosecutor on summation could legitimately comment upon it. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975).

▇ Appellant makes a broad based attack on the closing address of the assistant district attorney. Specifically, appellant refers to the alleged misrepresentation that the victim had been shot from the rear, and the reference to Detective Lynch's testimony concerning the missing eyewitnesses. Both of these issues have already been addressed and require no further discussion. The final complaint relating to the summation speech concerns a charge that the prosecutor "deliberately mis–stated the law". The basis of this charge was the prosecutor's statement that the motive for the killing did not have to be established by the Commonwealth. It is clear that the Commonwealth is not required to establish the motive for the killing in this jurisdiction, *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A.2d 561 (1966); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960); thus this complaint is also without merit.

▇ Appellant's final contention is that the trial court erred in permitting the jury foreman to correct his error in rendering the jury's verdict before the verdict was recorded. A reading of the pertinent portions of the transcript reveals that the jury foreman answered "not guilty" to the Crier's request for a verdict on the "first count murder", and "not guilty" to the Crier's request for a verdict on the "second count, voluntary manslaughter". In actuality, as confirmed by a subsequent poll of the jurors which was conducted prior to the recordation of the verdict, the jury had found appellant guilty of third degree murder. Apparently, the foreman confusedly thought the Crier was requesting the jury's verdict on first *degree* murder and on voluntary manslaughter, instead of actually asking him for the jury's verdict on the two general indictments of murder generally and voluntary manslaughter.

The trial transcript reveals that the jury foreman simply misunderstood the Crier's request.  The poll of the jury demonstrates that the jurors had unanimously agreed upon a verdict of murder of the third degree.  The law in Pennsylvania is clear that an improper verdict may be corrected prior to the recordation of the verdict.  Here, the trial judge acted properly by polling the jury to ascertain the correct verdict and by recording the proper verdict.  *See Commonwealth v. Craig*, 471 Pa. 310, 370 A.2d 317 (1977);  *Commonwealth v. Jackson*, 457 Pa. 237, 324 A.2d 350 (1974);  *Commonwealth v. Connor*, 445 Pa. 36, 282 A.2d 23 (1971);  *Commonwealth ex rel. Ryan v. Banmiller*, 400 Pa. 326, 162 A.2d 354 (1960).

Judgments of sentence affirmed.