487 A.2d 973

**COMMONWEALTH of Pennsylvania**

v.

**Anthony SHANDS, Appellant.**

Superior Court of Pennsylvania.

Submitted July 2, 1984.

Filed Jan. 25, 1985.

298

James J. DeMarco, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, DEL SOLE and LIPEZ, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is a direct appeal by Anthony Shands from a judgment of sentence imposing 11½ to 23 months imprisonment following his conviction by a jury on charges of Robbery, Theft, Receiving Stolen Property and Criminal Conspiracy. We have concluded that the trial court erred in restricting appellant's cross-examination of the prosecuting police officers and in failing to require the Commonwealth to make available for inspection the district attorney's files concerning his investigation of the officers. Therefore, we reverse.

The facts as recited by the trial court in its opinion are as follows:

This is a "Granny Squad" case. On December 16, 1980, in the Concourse of the City of Philadelphia the defendant Anthony Shands, nineteen years old, attempted to take money from the pocket of Officer Flanagan. Officer Flanagan was walking and clothed as an aged derelict. He was a decoy with four back-up officers ready to come to his aid as soon as he gave the signal that he had been robbed. These Granny Squads had been operating in high crime areas in the City of Philadelphia for many months prior to December 16, 1980. Officer Flanagan as a decoy would carry with him a roll of stage money with

one or two genuine dollars on top. In this case the defendant was seized by the back-up officers as he held Flanagan's roll of money in his hand.

The back-up officers assisted Officer Flanagan in the arrest of appellant and they all testified against him at his trial, which commenced on August 4, 1981.

Immediately preceding the trial, appellant's counsel and the Assistant District Attorney sought a pre-trial ruling regarding the scope of permissible cross-examination of the members of the "Flanagan Squad". At that time, the officers were under investigation by the United States Attorney for the Eastern District of Pennsylvania, the Philadelphia Police Department and the Philadelphia District Attorney's Office regarding allegations that, during 1980 and 1981, they had made false arrests, exhibited racial bias, used excessive force and testified falsely in criminal prosecutions of certain persons they had arrested. There was no indication that the investigation involved the charges made against appellant by the squad. Nonetheless, appellant's counsel requested that he be allowed to cross-examine the arresting officers regarding the ongoing state and federal investigations into other arrests made by them, including the subsequent disposition of certain cases by the Philadelphia District Attorney.

Appellant's counsel further requested that the District Attorney's file regarding the ongoing investigation be made available for his review. (August 4, 1981, N.T., pp. 13, 17–18, 25). In response to this request, the Assistant District Attorney stated that he was in the Trial Division of the District Attorney's Office, which was separate from the Investigation Division, and that he had nothing in his control that had not been provided to defense counsel. In response to defense counsel's assertion that the files should be submitted to the trial judge, the prosecutor argued that if the court determined that such evidence was irrelevant in the first place, then there was no need for the court to review the investigatory files. (August 4, 1981, N.T. 17–18). The trial court ruled that appellant was "not to delve

into any previous cases involving this particular Granny Squad." (August 4, 1981, N.T. p. 24).

Appellant was convicted by a jury on August 7, 1981 and on June 15, 1982, he was sentenced to two concurrent terms of 11 and ½ to 23 months imprisonment.[1] In the interim, on September 9, 1981, the four officers in the Flanagan Squad were indicted by a federal grand jury on charges that they conspired to violate the civil rights of eight named individuals whom they had arrested in a fashion similar to that employed in appellant's arrest. The District Attorney of Philadelphia cooperated in the federal investigation, and during the investigation, four cases in which the Flanagan Squad officers testified under oath at preliminary hearings held for persons they had arrested were nol prossed by the District Attorney. One week before the federal indictments were handed down, the District Attorney publically stated that he was convinced that at least four persons who had been accused by the squad were telling the truth when they denied the charges.

Thereafter, on February 11, 1982, Judge Richard B. Klein of the Philadelphia Court of Common Pleas entered an order holding that approximately twenty-five open cases involving arrests and prosecutions initiated by the Flanagan Squad would be dismissed unless the Commonwealth agreed to advise the trier of fact of, *inter alia,* the circumstances of the federal investigation and the action taken by the District Attorney in nol prossing four of the prosecutions.

On appeal, appellant claims that the trial court abused its discretion in limiting his counsel's cross-examination of the police witnesses concerning the criminal investigation of their Granny Squad operation. Appellant argues that he had a right to show, by cross-examination, that the witnesses called to testify against him were biased or had an

---

1. Appellant was initially sentenced on May 20, 1982, to two concurrent terms of 3 and ½ to 7 years imprisonment. However, appellant's *pro se* petition for reconsideration of sentence was granted and he was subsequently sentenced to the reduced term.

interest in the outcome of the trial.[2] The trial court, relying on *Commonwealth v. Cragle,* 281 Pa.Super. 434, 422 A.2d 547 (1980), determined that the prosecuting officers could not be impeached by evidence of criminal activities for which they had not been convicted. We find that *Cragle* is distinguishable from the instant case and that appellant's cross-examination of the police witnesses who testified against him was improperly restricted.

■ There are a multitude of ways to attack the credibility of a witness. *See McCormick on Evidence* § 33 at 72–73 (3d ed. 1984). In *Cragle,* defendant's counsel, employing one method, attempted to impeach a Commonwealth witness's character for truthfulness by showing that the witness had received stolen goods in the past and made a practice of handling stolen goods. However, the witness had not been convicted of the particular criminal activities referred to by defense counsel. Accordingly, our court determined that the trial court properly restricted defense counsel's cross-examination regarding the witness's alleged handling of stolen goods. Our court observed that, as a general rule, a witness must be convicted of an offense in the nature of *crimen falsi* before such evidence is relevant and admissible to impeach the witness's character; otherwise, admission of such evidence would constitute reliance on a hearsay assertion of guilt. *Commonwealth v. Cragle,* 281 Pa.Super. at 437, 422 A.2d at 549. *See Commonwealth v. Taylor,* 475 Pa. 564, 381 A.2d 418 (1977). However, attempting to introduce evidence of prior misconduct, for which there has been no criminal conviction, to impeach a witness's general character for truthfulness *differs* from attempting to introduce such evidence to show that a witness is biased or motivated by self interest in a particular case. *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110 (1974).

■ "A defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to

---

**2.** Because we reverse on this basis, we need not consider the merits of appellant's other contentions.

testify." *Commonwealth v. Dawson,* 486 Pa. 321, 405 A.2d 1230 (1979). A party against whom a witness is called has the right to show that the witness has an interest, direct or collateral, to the result of the trial. *Commonwealth v. Cheatham,* 429 Pa. 198, 239 A.2d 293 (1968). That right may not be abridged because incidentally facts may be developed that are prejudicial to the other party. *Id.,* 429 Pa. at 203, 239 A.2d at 296. As stated by the United States Supreme Court in *Davis v. Alaska, supra:*

> The introduction of evidence of a prior crime is ... a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony."

415 U.S. at 316, 94 S.Ct. at 1110 (citation omitted). In *Davis,* the Court held that the defendant's right of confrontation was abridged by the disallowance of cross-examination of the prosecution's witness regarding his adjudication as a juvenile delinquent, the fact that he was on probation when he testified, and that he was a possible suspect in the burglary for which the defendant was being tried.

In *Commonwealth v. Dawson, supra,* the defendant sought to cross-examine the detective who took his inculpatory statement following arrest in order to show that the detective had a motive to testify falsely. Specifically, the defendant proposed to show that the detective beat him prior to interrogation and that disciplinary action was taken against the detective as a result of the detective's conduct. Our Supreme Court held that the trial court's refusal to permit questioning on these matters was improper. The court determined that such evidence was relevant since the defendant's alleged misconduct may have motivated him to testify falsely in order to ingratiate himself with his superi-

ors. The court also noted that the disciplinary action taken against the detective may have motivated him to fabricate the defendant's confession or otherwise testify falsely.

■■■ In the instant case, at the time of appellant's motion to allow cross-examination concerning the criminal investigation, there was some evidence to indicate that the District Attorney himself had determined that certain prosecutions initiated by the squad were unfounded in other similar cases. Moreover, the Philadelphia Police Department and the District Attorney's office were cooperating in the federal investigation, and the Flanagan Squad had been removed from street duty a little over a month after appellant's arrest. Under these circumstances, we find that appellant was entitled to question the police officers who testified against him in order to explore possible motives they may have had to testify falsely. The jury should have been presented with a full and accurate picture of the possible motives or biases that may have led the officers to give false testimony, especially where the prosecutor himself doubted the veracity of the officers' testimony in other similar cases. *See Commonwealth v. Dawson, supra; Commonwealth v. Sullivan,* 485 Pa. 392, 402 A.2d 1019 (1979) (trial court erred in denying appellant the right to cross-examine police officer concerning his suspension from the police force following incident that resulted in appellant's arrest); *United States v. Miles,* 480 F.2d 1215 (2nd Cir.1973) (defendant was properly permitted to cross-examine government's detective about charges pending against him and suspension from the police department, where the detective may have been motivated to testify against defendant in order to ingratiate himself with his superiors). The error of the trial judge cannot be deemed harmless beyond a reasonable doubt since these officers were the only witnesses called by the Commonwealth to establish appellant's guilt. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Joines,* 264 Pa.Super. 281, 399 A.2d 776 (1979).

■ In addition, we find that it was the obligation of the district attorney to reveal the substance of the investigation, and any reasons he had to doubt the veracity of these witnesses, to the court prior to trial. Appellant's counsel requested that he be allowed to examine the district attorney's files in connection with the investigation of the squad. The Assistant District Attorney who handled this case, however, indicated that he was unable to provide appellant's counsel with information regarding the criminal investigation. The prosecutor further stated that even if he had access to the investigatory files, defense counsel was not entitled to review them because the contents were irrelevant to appellant's case. Although the prosecutor indicated that defense counsel would be informed of the identity of the person who he should contact at the District Attorney's office regarding the files, there is no indication in the record that the requested information was made available to defense counsel. Furthermore, the trial judge did not review the files to determine whether they contained information that may have been material and relevant to the issue of the officers' credibility; rather, the trial judge ruled that appellant was not to cross-examine the Commonwealth's witnesses regarding previous cases involving the Flanagan Squad.

■ The prosecutor's failure to disclose evidence favorable to the accused, if it existed, violates a defendant's right to a fair trial mandated by due process, if the evidence is material to the guilt or punishment of the defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecutor's duty is to seek justice, not merely to convict. Where, as here, a request was made for specific information, i.e., the file on the investigation of the officers who were to testify against the defendant, the defendant was at least entitled to a court inspection of those files to determine whether the evidence contained therein, "might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976); *Commonwealth v. Rose*, 483 Pa. 382, 396, 396 A.2d 1221, 1228 (1979). *See Commonwealth v. Watson*, 276

Pa.Super. 606, 419 A.2d 623 (1980). Appellant's counsel had "some reason" to believe that the inspection would lead to the discovery of evidence favorable to the defense. *Commonwealth v. Watson*, 276 Pa.Super. at 612, 419 A.2d at 626. He indicated to the trial court that he believed the files would reveal evidence that these officers testified falsely in other Granny Squad cases and that, in some cases in which these officers testified at preliminary hearings, the District Attorney had nol prossed charges. Defense counsel also indicated that appellant's arrest occurred around the same time as the alleged false arrests that were under investigation. Under these circumstances, it was for the trial judge to determine whether the defendant was entitled to review the specific requested information, *not* the prosecutor. *See Commonwealth v. Wallace*, 500 Pa. 270, 280, 455 A.2d 1187, 1192 (1983); *compare Commonwealth v. Watson, supra* (defendant not entitled to a court inspection of Commonwealth's investigatory files where he failed to offer grounds for the court to question the Commonwealth's representation that the particular statements requested contained no exculpatory information).

The prosecutor's assertion that he was in the Trial Division and, thus, he was not privy to information in the separate Investigation Division is insufficient justification for failing to, at least, provide the files for review by the trial court. The prosecutor's office is an entity and knowledge of one member of the office must be attributed to the office as a whole. *Commonwealth v. Wallace*, 500 Pa. at 276, 455 A.2d at 1190.

Our decision is further supported by the principles announced by the United States Supreme Court in *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956). In that case, the defendants were convicted by a jury of engaging in communist activities in violation of the Smith Act. When the case reached the Supreme Court, it was discovered that the Government's principal witness (a paid informant) at the *Mesarosh* trial had testified falsely in other proceedings involving the same communist activities.

The Government then filed a motion with the Supreme Court describing the incidents of the witness's false statements in other Smith Act cases. The Government requested that the Court remand the case to the District Court for a hearing regarding the witness's truthfulness, arguing that it was the Government's belief that the witness had testified truthfully in the *Mesarosh* case, despite his false testimony in other similar cases. The defendants' counter-motion requested a new trial. The Supreme Court determined that remanding the case to the District Court for a hearing regarding the witness's veracity was inappropriate because it was the jury's function to decide what it would do based on different evidence. In his opinion for the Court, Chief Justice Warren stated:

> The question whether his untruthfulness in these other proceedings constituted perjury or was caused by a psychiatric condition can make no material difference here. Whichever explanation might be found to be correct in this regard, Mazzei's credibility has been wholly discredited by the disclosures of the Solicitor General. No other conclusion is possible. The dignity of the United States Government will not permit the conviction of any person on tainted testimony.... The witness Mazzei was a paid informer of the Government ... It is the Government which now questions the credibility of its own witness because in other proceedings in the same field of activity he gave certain testimony—some parts of it positively established as untrue and other parts of it believed by the Solicitor General to be untrue.... The government of a strong and free nation does not need convictions based upon such testimony. It cannot afford to abide with them. The interests of justice call for a reversal of the judgments below with direction to grant petitioners a new trial.

*Id.* at 9–14. 77 S.Ct. at 5–8. In the instant case, unlike *Mesarosh*, it was defense counsel who advised the trial judge that these officers were under investigation for making false arrests and testifying falsely in other Granny

Squad cases. However, it was also the district attorney's responsibility to inform the court of these facts. This is not the usual case wherein a defendant requests a new trial on the basis of after-discovered evidence. *See Mesarosh,* 352 U.S. at 9, 77 S.Ct. at 5. Here, the Flanagan Squad was the focus of a wide-ranging criminal investigation in which the District Attorney cooperated. The District Attorney publically stated that he suspended prosecution in certain Granny Squad cases despite the fact that these officers had sworn, under oath, that robberies had been committed. It was the District Attorney who participated in bringing charges against the Flanagan Squad for their conduct in making arrests similar in character, and contemporaneous in time, to the arrest of appellant. Therefore, the credibility of the Flanagan Squad had been discredited by the District Attorney and the jury was entitled to be advised of that fact.

 Moreover, these officers were subsequently indicted by a grand jury on charges that the officers had conspired to violate the civil rights of eight named individuals arrested during the Granny Squad stake outs. The indictments were handed down approximately one month after appellant's conviction. Under these circumstances, we believe that appellant is entitled to a new trial, at which the jury must be advised of the facts impacting on the credibility of the Commonwealth's witnesses. *Cf. Williams v. United States,* 500 F.2d 105 (9th Cir.1974) (new trial granted where narcotics agent who testified against defendant was subsequently convicted of perjury in connection with an investigation that was similar to the investigation of defendant and occurred at the same time); *United States v. Chisum,* 436 F.2d 645 (9th Cir.1971) (defendant entitled to new trial where narcotics conviction rested on testimony of Government witnesses who were subsequently indicted on charges of perjury in connection with a similar narcotics investigation). *United States v. DiBernardo,* 552 F.Supp. 1315 (S.D.Fla.1982) (grand jury indictments of distributors of sexually explicit materials were dismissed because the in-

dictments were based upon testimony of FBI agent who was subsequently found to have perjurious propensities).

In addition, in cases tried after the officers' were indicted, the Commonwealth was directed to make known to the trier of fact all relevant evidence bearing on the credibility of these officers, for example, that the District Attorney had nol prossed four cases despite sworn statements by the officers that they had been robbed, and that the District Attorney's office had cooperated in the federal investigation of the Flanagan Squad. This is the very same type of information appellant sought to present at his trial but was precluded from doing so by the court's ruling.

We conclude that the trial court erred in limiting appellant's cross-examination of the Flanagan Squad regarding the circumstances surrounding the federal investigation. Furthermore, we find that the trial court should have been provided with the Commonwealth's files so that it could have been determined whether any information contained therein was material to the officers' credibility and, thus, subject to discovery.

Accordingly, the judgment of sentence is reversed and the case is remanded for a new trial.

Jurisdiction relinquished.