J-S07004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DURON BOSTON PEOPLES | : | |
| | : | |
| Appellant | : | No. 2110 EDA 2019 |

Appeal from the PCRA Order Entered June 18, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0004220-2009

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                          Filed: August 20, 2020

Appellant Duron Peoples appeals from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition.  Appellant claims that the Commonwealth committed a **_Brady_**[2] violation and that his trial counsel was ineffective for failing to investigate and present evidence of a former police detective's criminal conviction.  Appellant also raises several claims of ineffective assistance of trial counsel for failing to call certain witnesses at trial.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **_Brady v. Maryland_**, 373 U.S. 83 (1963).

Briefly, the trial evidence established that on October 21, 2006, at approximately 9:00 a.m., Eric Coxry entered Jonas Suber's home and fatally shot Suber with a .45 caliber pistol. Following an investigation, the Commonwealth charged Appellant with murder, conspiracy to commit murder, burglary, and solicitation of murder. At trial, the Commonwealth presented evidence establishing that in late September or early October of 2006, Appellant initially offered Donte Carter $10,000 to kill Jonas Suber, but Carter refused.

In October 2006, Victor Devalia, Marvin Molina, and Appellant drove from Georgia to Chester County, Pennsylvania.[3] On October 20, 2006, the day before Suber's murder, Devalia drove Appellant to a Home Depot in Downingtown where Appellant met Shamone Woods and gave Woods an envelope. Later that day, Appellant and Devalia were at Appellant's home in Chester County. Appellant showed Devalia a .45 caliber semi-automatic pistol and a .38 caliber revolver that Appellant had hidden in his home. According to Devalia, Appellant told him that the .45 caliber pistol is "what the big boys used to get the job done." N.T. Trial, 09/24/2014, at 128.

Devalia testified that he, Molina, and Appellant then went to the Regal Theater in Downingtown. Appellant then donned an afro wig and went into the theater for about ten minutes or so, during which time the

_____

[3] Appellant had residences in both Georgia and Chester County. *Id.* at 95-99.

- 2 -

Commonwealth alleged Appellant gave the .45 caliber pistol to Woods. Appellant, Molina, and Devalia then drove back to Georgia. During the drive, Devalia heard Appellant talking to Woods and telling him to "burn the house down." Devalia testified that Appellant stated that he did not care whether the wife and kids were there. Devalia heard Woods reply, "I got you." *Id.* at 149.

Clarence Milton stated that on October 20, 2006, Woods, Coxry and a third individual came to the home where Milton was staying. Coxry showed Milton a .45 caliber pistol, and Coxry told Milton that he had been paid $20,000 to "take care the whole situation" with Suber. N.T. Trial, 9/23/14, at 99-102.

On October 21, 2006, at around 9:30 a.m., Devalia heard Woods tell Appellant that Suber had been transported to a hospital. N.T. Trial, 09/24/2014, at 150-52, 155. Appellant then told Devalia that Suber "got shot" and smirked. *Id.* at 153. Devalia asked Appellant who did it, and Appellant responded "my man referred a friend." *Id.*

We note that the record shows that on October 22, 2006, Bashera Grove, Suber's widow, spoke to Gerald Pawling, who was a detective with the Coatesville Police Department at that time. When asked to identify the shooter from a photo array, Grove initially selected a photo of Devalia. N.T. Trial, 9/22/14, at 110-13; N.T. Trial, 9/23/14, at 77-78.

Devalia was arrested in connection with the Suber murder in Georgia on November 2, 2006. N.T. Trial, 9/24/14, at 155-57, 190-91. Ralonda

Spann, Appellant's paramour, testified that when Appellant learned that Devalia was arrested, he became very upset and told her that Devalia had not done anything wrong and that if Devalia were convicted, he would "plead to everything." N.T. Trial, 9/25/14, at 226-27, 243-44. The charges against Devalia were dropped two weeks later, and he was released.

On November 10, 2006, Detective Kevin Campbell of the Coatesville Police Department executed a search warrant on Appellant's residence in Caln Township, Chester County. N.T. Trial, 9/26/14, at 116-27; N.T. Trial, 9/29/14, at 78-82. In addition to Detective Campbell, three other officers took part in executing the search warrant. N.T. Trial, 9/29/14, at 79. The police recovered a box of .45 caliber bullets and a loaded .38 caliber revolver hidden in the laundry room. N.T. Trial, 9/26/14, at 121-27; N.T. Trial, 9/29/14, at 79, 92. Exhibits C-66E, C-66F, C-70. The police searched Appellant's residence for over an hour but did not find a .45 caliber semi-automatic pistol. N.T. Trial, 9/29/14, at 79-80. A fingerprint lifted from the box of bullets was later matched to Appellants' fingerprints. *Id.* at 92. Pawling was among the officers who searched Appellant's home with Detective Campbell.

On or about August 25, 2009 Appellant was arrested and charged with murder, conspiracy, and related offenses.

In April 2014, approximately five months before Appellant's trial, former detective Pawling pled guilty to numerous counts of forgery, access device fraud, theft, receiving stolen property, and tampering with public

- 4 -

records in an unrelated case. The charges related to Pawling stealing and tampering with evidence in the possession of the police. Pawling was sentenced in July 2014.

On October 1, 2014, a jury convicted Appellant of first degree murder, conspiracy to commit murder, burglary, and solicitation of first degree murder.[4] N.T. Trial, 10/1/14, at 2-4.

This Court briefly summarized the procedural history of this case in its decision regarding Appellant's direct appeal:

> On October 2, 2014, the day after [Appellant's] conviction, the jury convened and sentenced [Appellant] to life imprisonment for first-degree murder. On October 24, 2014, the court formally imposed the sentence of life imprisonment, along with several concurrent sentences for other offenses. However, with respect to [Appellant's] conviction for soliciting Donte Carter to kill Suber, the court imposed a consecutive sentence of ten to twenty years' imprisonment.

*Commonwealth v. Peoples*, 2015 WL 6948437, *1 (Pa. Super. filed Oct. 30, 2015) (unpublished mem.) (footnote omitted) *appeal denied*, 136 A.3d 980 (Pa. 2016). This Court ultimately affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on April 12, 2016. *Id.*

On April 4, 2017, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed PCRA counsel, who filed an amended petition on November 14, 2017, and subsequently filed a second amended petition,

_____

[4] 18 Pa.C.S. §§ 2502(a), 903(a)(1), 3502(a), and 902, respectively.

which the PCRA court accepted on October 18, 2018. In his PCRA petition, Appellant claims the Commonwealth committed a ***Brady*** violation when it failed to disclose Pawling's convictions. Second Am. PCRA Pet., 10/10/18, at ¶¶ 30-44. Appellant also claims that trial counsel was ineffective for not "impeaching" the police's handling of the investigation based on Pawling's criminal conduct. ***Id.*** at ¶¶ 45-52. Lastly, Appellant claims that trial counsel was ineffective for not calling several "key witnesses" who, Appellant asserted, could provide testimony to rebut the evidence that Appellant possessed and gave Woods the .45 caliber pistol that was ultimately used to kill Suber. ***Id.*** at ¶¶ 53-60.

On March 13, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's second amended PCRA petition (Rule 907 Notice), which stated that Appellant's issues lacked merit. Appellant did not file a response to the Rule 907 notice, and the PCRA court dismissed Appellant's petition on June 18, 2019.

PCRA counsel filed a timely notice of appeal on July 18, 2019.[5] Appellant timely filed a Pa.R.A.P. 1925(b) statement. The PCRA court

---

[5] The PCRA court's order dismissing the instant PCRA is dated June 17, 2019, but was docketed and mailed to Appellant on June 18, 2019. Consequently, the appeal period did not begin until that date. ***See Commonwealth v. Gaines***, 127 A.3d 15, 18 (Pa. Super. 2015) (*en banc*) (stating that "in computing any period of time under [the] rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties" (quoting Pa.R.A.P. *(Footnote Continued Next Page)*

- 6 -

submitted a Pa.R.A.P. 1925(a) opinion referring this Court to its March 13, 2019 Rule 907 Notice and its June 18, 2019 order denying Appellant's PCRA petition.

Appellant raises the following issues:

1. The PCRA [c]ourt erred in determining the [Appellant] was not due relief for his claims based on the failure of the District Attorney's Office to disclose the investigation into the illegal conduct of former-detective Gerald Pawling as impeachment evidence under **Brady v. Maryland**.

2. The PCRA [c]ourt erred in determining the [Appellant] was not due relief for his claims based on the ineffective assistance of defense counsel with regard to impeachment of the investigation done by former-detective Gerald Pawling.

3. The PCRA [c]ourt erred in determining the [Appellant] was not due relief for his claims of ineffective assistance of counsel for failure to call key witnesses for the defense.

Appellant's Brief at 7.

Our standard of review for an order denying a PCRA petition is "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Grayson**, 212 A.3d 1047, 1051 (Pa. Super. 2019) (citation omitted).

---

*(Footnote Continued)*

108(a)(1)). Appellant's notice of appeal was due thirty days from June 18, 2019, which was Thursday, July 18, 2019. **See id.** (citing Pa.R.A.P. 903). Therefore, Appellant's notice of appeal was timely filed.

Where, as in the instant case, the PCRA court has dismissed a petition without an evidentiary hearing, we review the PCRA court's decision for an abuse of discretion. *See Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013) (stating that "[t]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." (citation and quotation marks omitted)). Pursuant to Rule of Criminal Procedure 907, a PCRA court has the discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact, that the defendant is not entitled to PCRA relief, and that no legitimate purpose would be served by further proceedings. *See* Pa.R.Crim.P. 907(1); *Roney*, 79 A.3d at 604.

Furthermore, this Court has explained that

> [a] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing.

*Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa. Super. 2015) (citations omitted and some formatting altered). Further, "we may affirm the PCRA court's decision on any basis." *Commonwealth v. Charleston*,

94 A.3d 1012, 1028 (Pa. Super. 2014) (citation and quotation marks omitted).

### *Brady* Violation Claim

In Appellant's first issue, he claims that the Commonwealth committed a **Brady** violation when it failed to inform trial counsel of former detective Gerald Pawling's misconduct and conviction. Appellant's Brief at 12-13. Appellant argues that Pawling's criminal conduct was "impeachment evidence" because Pawling participated in the investigation of Suber's murder. ***Id.*** at 14-15. Lastly, Appellant contends that if Pawling's criminal conduct was presented at trial, "the jury should have seen the evidence collected in a different light." ***Id.*** at 16. Appellant concludes the PCRA court erred in declining to hold a hearing on his **Brady** claim. ***Id.***

The Commonwealth responds that no **Brady** violation occurred, as the evidence at issue was available to Appellant from non-governmental sources, including news coverage. Commonwealth's Brief at 13-14. The Commonwealth also notes that Appellant, in his second amended PCRA petition, essentially conceded that the information about Pawling's convictions was publicly available. ***Id.*** at 14-15.

Our Supreme Court has explained that

[u]nder **Brady** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a **Brady** violation, an appellant must prove three elements:

(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

\* \* \*

*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does *Brady* require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. *Brady* is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

*Roney*, 79 A.3d at 607-08 (citations omitted and some formatting altered); *see also Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (stating that *Brady* evidence "cannot have been equally available to the defense, and cannot have been discoverable through the exercise of reasonable diligence" (citations omitted)). Our Supreme Court has held that because criminal records are public records readily obtainable by the defense from non-governmental sources, they cannot serve as the basis for a *Brady* claim. *Commonwealth v. Tharp*, 101 A.3d 736, 751-52 (Pa. 2014).

Instantly, the PCRA court, in rejecting Appellant's *Brady* claim, observed that Appellant's petition acknowledged that Pawling's guilty plea in July of 2014 received "a large amount of news coverage." Rule 907 Notice, 3/13/19, at 4 (unpaginated) (quoting Second Am. PCRA Pet., 10/10/18, at 10). The PCRA court concluded that

[Appellant] has, in effect, conceded that this claim is not a cognizable **Brady** violation. . . . An event which received "a relatively large amount of news coverage," and was therefore known to the public at large, is not in the sole possession of the Commonwealth. Moreover, a person's conviction of a crime is not "evidence" in the "possession" of any Commonwealth agency - it is a matter of public record. The court cannot find a **Brady** violation, as this evidence was freely available to the defense prior to trial.

**Id.**

Based on our review of the record, we discern no error in the PCRA court's decision. **See Grayson**, 212 A.3d at 1051; **Roney**, 79 A.3d at 603. Pawling's guilty plea, which occurred several months prior to Appellant's trial, was not only a matter of public record but also, according to Appellant, received a large amount of new coverage.[6] Therefore, the evidence of Pawling's misconduct and conviction was equally available to the defense. **See Tharp**, 101 A.3d at 751-52; **Simpson**, 66 A.3d at 264. Accordingly,

_____

[6] Appellant argued the following in his second amended PCRA petition:

It is expected, and would be appropriate for the Commonwealth to argue that Gerald Pawling plead [sic], amidst a relatively large amount of news coverage, to theft, tampering with evidence, forgery, and other crimes, which would cause this not to be a **Brady** issue at all, at least the filing of criminal charges in 2013 onward to the guilty plea before this [c]ourt in July 2014, this was instead a matter trial counsel ought to have known of and raised as impeachment evidence. See Exhibit D (Docket 3205-2013), E (Docket 1000-2014), F (Docket 1006-2014).

Second Am. PCRA Pet., 10/10/18, at 10.

- 11 -

Appellant was not entitled to relief on his **Brady** claim. **See Roney**, 79 A.3d at 607-08.

### Trial Counsel Ineffectiveness For Failure to Investigate

Appellant's second argument is that trial counsel was ineffective for failing to investigate, discover, and use Pawling's misconduct and conviction during Appellant's trial. Appellant's Brief at 17-18. As to the arguable merit and reasonable basis prongs of his arguments, Appellant claims that "the crimes Pawling plead [sic] to would unquestionably be admissible to impeach him and anything that was submitted as discovery materials which had his name attached to it." **Id.** at 18. Appellant asserts that calling Pawling "would have been dramatic and, was absolutely possible given the subpoena power of the court and the fact that Pawling signed off on a number of the reports and investigation documents which brought [Appellant] to this trial." **Id.** at 18. Appellant further argues that trial counsel submitted a letter indicating that he did not recall being aware of Pawling's convictions at the time of trial, despite the publicity surrounding Pawling. **Id.** at 18-19 (citing Second Am. PCRA Pet., 10/10/18, Ex. C,).

As to prejudice, Appellant claims that "Pawling's convictions would have called into question the evidence collected and the witnesses' testimony, such that . . . the outcome of the trial would have been different." **Id.** at 19. More specifically, Appellant argues that the jury would have seen the collection of evidence in a different light if the jury had heard that Pawling stole from the evidence room in an unrelated case. **Id.** at 19-

20. Further, Appellant argues that due to Pawling's criminal convictions, witnesses that Pawling interviewed or "developed as informants," such as Devalia, cannot be considered reliable. *Id.* at 20.

The Commonwealth responds that Appellant's claim lacks arguable merit. The Commonwealth acknowledges that a police witness may be "cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate." Commonwealth's Brief at 18 (citing ***Commonwealth v. Peetros***, 535 A.2d 1026 (Pa. 1987)) (emphasis omitted). The Commonwealth argues that because Appellant has not shown that Pawling committed any crime or wrongdoing with respect to Appellant's case, evidence of Pawling's unrelated police misconduct would have been inadmissible. *Id.* at 20 (citing, *inter alia*, ***Commonwealth v. Boczkowski***, 846 A.2d 75 (Pa. 2004)). The Commonwealth also argues that Appellant did not establish prejudice because Appellant did not "identify or specify one specific instance in the record of how impeaching Pawling could have altered the evidence, and thus changed the outcome of the trial" and failed to demonstrate "specifically the manner in which [Pawling's] testimony could have altered the outcome of his trial." *Id.* at 16, 19 (citations omitted).

The PCRA court explained its decision to dismiss Appellant's claims as follows:

> [Appellant] only speaks in broad generalizations about the impact of raising Pawling's convictions, stating that such evidence "would have called into question the evidence collected

and the witnesses' testimony, such that we believe the outcome of the trial would have been different." [Appellant] does not provide any further specificity on precisely what evidence in this case would be rendered questionable by Pawling's conduct, nor does he provide the identity of any witness or witnesses who would be open to cross-examination on any improper behavior that Pawling may have exhibited relating to this case. As a result, any evidence of Pawling's behavior would have been "unrelated to the present matter and irrelevant," and counsel cannot be ineffective for failing to introduce irrelevant evidence. [Appellant] further argues that "to call the former detective as a witness—while he is serving jail time for theft from the evidence room—would have been dramatic[.]" This position is completely unsupported in law, as the perceived "drama" of a court proceeding is not in any way determinative of its legal propriety.

Rule 907 Notice, 3/13/19, at 5 (unpaginated).

In reviewing Appellant's claim, we are guided by the following principles. It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise by a preponderance of the evidence. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Therefore, a petitioner must demonstrate

ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations and quotation marks omitted).

It is well settled that

- 14 -

> [c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. . . . The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

*Commonwealth v. Johnson*, 966 A.2d 523, 535-36 (Pa. 2009) (citations omitted).

In order to obtain relief on a claim of ineffective assistance of counsel for failing to call a potential witness, a PCRA petitioner must establish that

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Id.* at 536 (citation omitted).

We add that our "case law permits a police witness to be cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate." *Commonwealth v. Bozyk*, 987 A.2d 753, 757 (Pa. Super. 2009) (citing, *inter alia*, *Peetros*, 535 A.2d 1026). "However, if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident." *Id.* (citations omitted). Our Supreme Court in *Peetros* granted the appellants a new trial because the trial court improperly restricted cross-examination to exclude the prior disciplinary action of a police witness involved in bribery

- 15 -

activities with appellants. ***Peetros***, 535 A.2d at 1034; ***see also Commonwealth v. Dawson***, 405 A.2d 1230 (Pa. 1979) (holding that defendant was improperly denied his right to cross-examine police witness about his motive to fabricate evidence of defendant's confession in order to obtain conviction where there was an allegation that the officer beat co-defendant with a nightstick); ***Commonwealth v. Sullivan***, 402 A.2d 1019 (Pa. 1979) (holding that trial court improperly denied defendant the right to cross-examine police officer who faced suspension based on the outcome at defendant's trial); ***Commonwealth v. Shands***, 487 A.2d 973 (Pa. Super 1985) (reversing conviction and remanding for a new trial because defendant was denied the right to cross-examine arresting police officers regarding ongoing federal and state investigations into their conduct in similar cases which included racial bias, false arrests, and perjury; and where the prosecutor doubted their veracity in prior cases). ***Accord United States v. Miles***, 480 F.2d 1215 (2d Cir. 1973) (holding that the defendant was properly permitted to cross-examine a police detective about pending charges and suspension where the detective may have been motivated to testify against defendant to ingratiate himself with his superiors).

Here, the record demonstrates that Pawling's role in the murder investigation began with photographing the crime scene. N.T. Trial, 9/26/14, at 92-94; Second Am. PCRA Pet., 10/10/18, Ex. B. Pawling was present at Suber's autopsy, along with Detective Kenneth Beam. N.T. Trial, 09/26/14, at 80-86; Second Am. PCRA Pet., 10/10/18, Ex. B.

Additionally, Pawling interviewed Grove, Suber's widow, on October 22, 2006, at which time she selected a photo of Devalia from a photo array and identified him as the shooter. N.T. Trial, 9/22/14, at 111-15; N.T. Trial, 09/23/14, at 77-78; Exhibits C-44, C-44A; Second Am. PCRA Pet., 10/10/18, Ex. B. In January of 2009, Grove identified Coxry as the shooter from a different photo array. N.T. Trial, 9/22/14, at 115-17; Exhibit C-44B. Grove testified at trial that she initially misidentified Devalia because Suber's brother showed her a picture of Devalia with Appellant. N.T. Trial, 9/22/14, at 113-15.

On November 10, 2006, Pawling went to the Regal Cinemas to follow up on Detective Kevin Campbell's examination of security footage from October 20, 2006. Second Am. PCRA Pet., 10/10/18, Ex. B. Pawling determined that the theater's security system had already recorded over the footage from October 20, 2006. *Id.*

Pawling was one of four police officers who served a search warrant on Appellant's residence in Caln Township. *Id.*; N.T. Trial, 09/29/14, at 79. During the execution of that search warrant, police recovered a box of .45 caliber bullets and a .38 caliber revolver. N.T. Trial, 09/26/14, at 121-27; N.T. Trial, 09/29/14, at 79, 92.

The record shows that the evidence presented at trial established that Appellant possessed a .45 caliber pistol, the same caliber used to shoot Suber. Donte Carter testified that Appellant previously solicited him to kill Suber. N.T. Trial, 09/25/14, at 7, 9. Witness testimony of Devalia indicated

- 17 -

that Appellant conspired with other individuals to shoot Suber, and Appellant was in contact with his co-conspirators after the shooting occurred. N.T. Trial, 9/24/14, at 118-22, 148-55. Lastly, Rolanda Spann testified that when Appellant heard that Devalia was arrested in connection to the murder, Appellant told her that he would admit to everything to prevent Devalia from being falsely convicted. N.T. Trial, 09/25/14, at 226-27, 243-44.

Our review of the record reveals that although trial counsel was aware of the criminal charges that were filed against former detective Pawling, trial counsel did not undertake a reasonable investigation into the nature of these charges and their potential impeachment value.[7] *See Johnson*, 966 A.2d at 535-36. Appellant has shown that trial counsel knew of, or should have known of, the existence of Pawling as a witness. *See id.* at 536. However,

---

[7] Trial counsel stated in his letter that he had a "vague recollection of Mr. Pawling being arrested for crimes relating to fraudulently making an insurance claim, or claims, I do not recall the Commonwealth advising me that [] Pawling was charged with stealing evidence from the Coatesville Police Department, or anything that related to any evidence in [Appellant's] case." Second Am. PCRA Pet., 10/10/18, Ex. C.

We note that it is troubling that Appellant's trial counsel "did not recall being aware" of the charges against Pawling, which resulted in Pawling's guilty plea to theft, tampering with evidence, forgery, and other crimes, which, according to the trial court and the Commonwealth, and, in part, admitted to by Appellant, were highly publicized. *See e.g.*, *Commonwealth v. Miller*, 987 A.2d 638, 666 (Pa. 2009) (stating that the "reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." (citations omitted)).

Appellant has not shown that Pawling was willing to testify for the defense. *See id.* Therefore, Appellant cannot establish that his claim that Pawling should have been called as a witness had arguable merit. *See id.; see also Sandusky*, 203 A.3d at 1043.

Further, based on Pawling's limited role in this case, as compared to the overwhelming and properly admitted evidence of Appellant's guilt presented at trial, we conclude that Appellant has failed to prove unfair prejudice that would have changed the outcome of the trial based on trial counsel's failure to present Pawling's wrongdoing, which Appellant has not shown to be related to his case. Therefore, trial counsel was not ineffective. *See Sandusky*, 203 A.3d at 1043. Accordingly, for the reasons herein, Appellant's claim of ineffectiveness of trial counsel for failing to call Pawling as a witness fails.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant relief on this claim. *See Grayson*, 212 A.3d at 1051; *Roney*, 79 A.3d at 603.

**Trial Counsel Ineffectiveness for Failure to Call Witnesses**

Appellant's final argument is that trial counsel was ineffective for not calling several witnesses. Appellant's Brief at 21-24. Specifically, Appellant contends that trial counsel failed to call Shamone Woods, Corporal Jack Wall, a ballistics expert, and either Jason Smith or Detective Kevin Dykes. Appellant argues that these witnesses would have testified that Appellant did

not possess the firearm used to commit the murder, and that he was not the "mastermind" of the conspiracy to kill Suber. *Id.* at 22-23.

The Commonwealth responds that the PCRA court properly dismissed Appellant's claims because PCRA counsel did not submit signed certifications as to each of these intended witnesses as required by 42 Pa.C.S § 9545(d)(1); Pa.R.Crim.P 902(A)(15). Commonwealth's Brief at 23. The Commonwealth argues that Appellant's failure to include the witness certifications was fatal to his claim. *Id.* at 23-24 (citations omitted).

> There are two requirements for relief on an ineffectiveness claim for a failure to present witness testimony. The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." 42 Pa.C.S. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15).

*Commonwealth v. Reid*, 99 A.3d 427, 438 (Pa. 2014) (some citations omitted). This Court has held that where a petitioner "failed to provide any certification with respect to potential witnesses, the [PCRA c]ourt clearly did not abuse its discretion by failing to conduct an evidentiary hearing." *Commonwealth v. Brown*, 767 A.2d 576, 583 (Pa. Super. 2001).

Initially, we note that although Appellant included a list of witnesses that he intended to call at the evidentiary hearing, the PCRA court found that this information was "not sufficient to satisfy the procedural requirements for a PCRA hearing." Rule 907 Notice, 3/13/19, at 3 (unpaginated). Specifically, the PCRA court found that "[Appellant] had failed to provide a

signed certification as to each intended witness, and for that reason alone he is not entitled to a hearing." *Id.* (quotation marks omitted). The PCRA court, however, chose to address the merits of Appellant's claim in its 1925(a) opinion, and concluded that Appellant's claims were meritless. *Id.*

The record shows that Appellant's second amended PCRA petition does not contain a certification signed either by Appellant or his counsel with respect to his proposed witnesses as required by 42 Pa.C.S. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15). The petition contains a witness list, but it lacks the identifying information and summary of witness's testimony. *See* Pa.R.Crim.P 902(A)(15). As Appellant failed to provide such certifications with respect to potential witnesses, the PCRA court did not abuse its discretion in declining to hold an evidentiary hearing. *See Brown*, 767 A.2d at 583.

Although the PCRA court dismissed Appellant's petition without an evidentiary hearing, the PCRA court addressed Appellant's specific ineffectiveness claims in its Rule 1925(a) opinion. Therefore, we will briefly examine the merits of those claims. We have already set forth the standard for establishing such a claim above. *See Johnson*, 966 A.2d at 536; *see also Reid*, 99 A.3d at 438.

Appellant first argues that trial counsel failed to call Corporal Wall, a ballistics expert who prepared a report concluding that the bullets recovered from Suber's body matched bullets recovered in connection with the attempted murder of Curtis Self. Appellant's Brief at 21. Appellant's next

- 21 -

proposed witness, Jason Smith, gave a statement to Detective Kevin Dykes in which he stated that on or about September 12, 2006, he saw Shamone Woods ask Keisha Washington to conceal a silver pistol used in the shooting of Curtis Self. *Id.* at 22; *see also* Second Am. PCRA Pet., 10/10/18, Ex. G.[8] Lastly, Appellant proposed calling Shamone Woods as a witness to testify that Clarence Milton "had no access to [Appellant], then Milton would have been completely discredited at trial." *Id.* at 22-23. Appellant argues that if these witnesses had been called at trial, they would have demonstrated that Appellant was not the "mastermind" of the conspiracy to murder Suber. *Id.* at 23.

The Commonwealth responds that Appellant is not entitled to relief on his claim of ineffective assistance of counsel. According to the Commonwealth, Appellant did not establish that the proposed witnesses were willing to testify on Appellant's behalf. Commonwealth's Brief at 22, 24. Additionally, the Commonwealth argues that Appellant has not established that trial counsel was aware of these potential witnesses nor their purported testimony. *Id.* at 24.

We now turn to Appellant's claims with respect to the individual witnesses.

_____

[8] Appellant suggested that in the alternative, trial counsel should have called Detective Dykes to testify about his interview with Smith. Appellant's Brief at 21. Appellant does not present any argument regarding Dykes as a potential witness.

According to Appellant, because Corporal Wall "is a professional . . . he would have been available to testify if given reasonable notice, and certainly had no reason not to testify as to the information in his report." *Id.* at 21-22. Appellant argues that his trial counsel knew about all of these proposed witnesses, and that they were available and willing to testify. *Id.* at 22. Appellant argues that his trial counsel had no reasonable basis for failing to call these witnesses to impeach Devalia, who testified that Appellant had hidden a gun in his home, and Clarence Milton, who testified that Appellant ordered and paid for the murder of Suber. *Id.* at 9-10, 22-24. Appellant argues that he was prejudiced by trial counsel's failure to call these witnesses because they would have discredited Devalia and Milton. *Id.* at 24.

With respect to Appellant's claim regarding the failure to call Corporal Wall, the PCRA court explained:

> In his petition, [Appellant] describes, *inter alia*, the witnesses that should have been called by counsel at trial. However, [Appellant's] argument consists completely—sometimes explicitly —of [Appellant's] mere assumption that a given witness would be available and willing to testify on [Appellant's] behalf. The first witness is a ballistics expert, Corporal Jack Wall of the Pennsylvania State Police, who prepared a report which, according to [Appellant], "states conclusively that the bullets from the shooting of [] Suber (10/21/06) matched the bullets from the prior shooting of and attempted murder of Curtis Self (9/12/06)." (The ballistics report in question is attached to the Second Amended Petition as "Exhibit A.") With regard to Corporal Wall's ballistics report, [Appellant] states that "[t]his ballistics report was available to the defense, therefor[e] Mr. Harmelin is presumed to have knowledge of it. The writer of the report is a professional, we assume he would have been

available to testify if given reasonable notice[.]" No evidence has been presented that this was the case.

Rule 907 Notice, 3/13/19, at 5 (unpaginated).

Based on our review of the record, we conclude that the PCRA court did not abuse its discretion in rejecting Appellant's claim regarding Corporal Wall. Appellant did not establish that Corporal Wall was available to testify at trial. Instead Appellant only provided the conclusory statement that because Wall "is a professional, we assume he would have been available to testify if given reasonable notice, and certainly had no reason not to testify as to the information in his report." Appellant's Brief at 21-22. This is insufficient to establish the element of availability by a preponderance of the evidence. ***See Johnson***, 966 A.2d at 536; ***see also Williams***, 732 A.2d at 1177.

Next, as to Smith, Appellant argues "[t]here is no indication that Smith would not have been willing and available to testify to the information he gave in the police interview." Appellant's Brief at 22.

The PCRA court rejected Appellant's arguments regarding Smith's testimony, concluding that they "lack[ed] any sort of specificity, and merely reflect[ed] [Appellant's] uncorroborated hope that certain witnesses would have testified on his behalf, and therefore [did] not rise to the level required to sustain ineffective assistance of counsel." Rule 907 Notice, 3/13/19, at 6 (unpaginated).

We agree with the PCRA court's conclusion. Appellant has not shown that trial counsel knew or should have known about Smith's statement, which he gave in connection with an unrelated shooting. Further, Appellant has not shown that Smith was available and willing to testify. Appellant relies on the assumption that Smith would be willing and available to testify and that his testimony would be consistent with his statement to the police. This is insufficient to establish ineffective assistance of counsel by a preponderance of the evidence. *See Johnson*, 966 A.2d at 536; *see also Williams*, 732 A.2d at 1177.

Finally, Appellant argues that his trial counsel failed to call Shamone Woods to testify that Clarence Milton did not have "access to" Appellant. Appellant's Brief at 9, 22-23.

> The PCRA court addressed Appellant's claim as follows:
>
> Likewise, [Appellant] asserts that trial counsel should have called [Appellant's] co[-]conspirator Shamone Woods, and that "Mr. Woods ... demonstrates his willingness to answer [questions as a witness] by the affidavit attached hereto." As stated above, no such affidavit is attached to the petition, therefore we cannot ascertain any intent by Mr. Woods to have testified on behalf of [Appellant] at trial.

Rule 907 Notice, 3/13/19, at 5-6 (unpaginated).

We agree with the PCRA court that Appellant did not establish that trial counsel was ineffective for failing to call Woods as a witness. Further, Appellant did not demonstrate that Woods was available and willing to testify

on his behalf. Therefore, Appellant's claim fails. *See Johnson*, 966 A.2d at 536; *see also Williams*, 732 A.2d at 1177.

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's second amended PCRA petition without a hearing. *See Roney*, 79 A.3d at 604.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20